MIKULENKA v. MIKULENKA et ux.

No. 9287.

Court of Civil Appeals of Texas. Austin.

Jan. 27, 1943.

518

McCLENDON, Chief Justice.

Suit by Louis (Louis Mikulenka) against Tom (Tom Mikulenka) and wife Marie (sometimes called Mary) upon a promissory note and to foreclose an alleged equitable lien upon 40 acres of land, the homestead of defendants. The judgment (upon a directed verdict) was in favor of Louis against both Tom and Marie upon the note, and against Louis on his asserted lien. The appeal is by Louis from that portion of the judgment denying his lien. No question is raised regarding the personal judgment on the note.

The following facts were not disputed:

Tom bought the land in 1920, part of the consideration being six notes secured by vendor's lien on the land. The first four notes were paid in 1922. Notes 5 and 6 (for $400 and $500 and due December 1, 1925, and 1926, respectively) were paid November 25, 1924, and release of lien by payee was executed and placed of record. Tom borrowed from Marie's father, John Tanecka, Sr., $800 of the money with which to pay off notes 5 and 6. Tanecka died in 1927, and later the same year Tom borrowed from Louis (his brother) $500 with which to pay the remaining balance of the debt to Tanecka's children—three, in number, including Marie. The record is silent as to whether Tom was married at the time he bought the property, and it does not appear whether the title was in him or in the community. That they were married when the money was borrowed from Tanecka appears from the fact that Tanecka was then father-in-law of Tom. The evidence is quite meager upon the homestead character of the property, but since all parties to the suit seem to have assumed it to be such, we will so treat it.

Louis's claim to an equitable lien is predicated upon the theory that Tanecka acquired a lien to secure his debt by subrogation to the rights of the vendor's lien holder, and Louis was in turn likewise subrogated to the rights of Tanecka, under the well established principle announced in Fievel v. Zuber, 67 Tex. 275, 3 S.W. 273, that where one loans money with which to discharge a lien upon real estate, under an express agreement of subrogation, or "if the payment was made under circumstances from which such an understanding might reasonably be implied," the subrogation is effected.

The evidence bearing upon this issue of an express or implied agreement came en-

C. C. Jopling, of LaGrange, for appellant.

George L. Kroll, of LaGrange, for appellees.

tirely from testimony of Tom, Louis and Psencik, a disinterested witness. Before stating its substance, it should be noted that Tom and Louis were of Bohemian extraction, and the record clearly shows that they understood English very imperfectly, the respective attorneys finding it difficult to get intelligent answers to their questions. Tom testified that he borrowed the money from his father-in-law in order to pay off the last two vendor's lien notes, and so used it, and that he told Tanecka the purpose for which he wanted the money. He also testified that he borrowed the $500 from Louis with which to pay off the three Tanecka children, and he so used it, but denied that he told Louis it was "to pay off the land." Louis testified that when he loaned the money, Tom told him he wanted it to pay off the Tanecka children. "Said he owed them for the land."

"Q. In reference to this $500 what did he say, if anything, in regard to any security? A. He said if he would let me have the lien, I would have the same lien that old man Tanecka had."

"Q. What did he say with reference to security with reference to Tanecka had for the money he owed him? A. Said he would let me have the same lien as old man Tanecka had."

"Q. Did he tell you what he had done with the money which he had gotten from Tanecka? A. Yes, he got to have it to pay the land out."

Psencik corroborated Louis's above testimony. Tom denied it, except in so far as embodied in his above testimony.

■ It is quite clear that this evidence was sufficient to support a finding of an express agreement on Tom's part that Louis should be secured by the same lien that Tanecka had. It would also support findings that Tom represented to Louis that Tanecka had a lien on the property and that Tom understood that such was the case. Tom was an interested witness, and the only living person, so far as the record shows, who knew what transpired between him and his father-in-law at the time he borrowed the $800. Under these circumstances we think his declarations as to what he understood to be the result of these negotiations were sufficient to support a fact finding that there was an agreement, express or implied, that Tanecka should have a lien to secure the loan.

■ The right of the husband alone to deal with liens upon the homestead, which attached to the property prior to the homestead right, so long as he does not act in fraud of the wife's homestead interest, is well established in this state. Cooper v. Hinman, Tex.Com.App., 235 S.W. 564. We are concerned here only with a vendor's lien. A different rule applies to a mechanic's lien created upon the homestead property by joint action of both spouses. Uvalde R. A. Co. v. Hightower, Tex.Com. App., 166 S.W.2d 681.

■ Besides examining all the authorities cited by the respective parties, we have made an independent investigation of Texas decisions bearing upon the issues raised by the briefs; and have failed to find any case which we regard as controlling the evidentiary situation here presented. The authorities are in accord in support of the above principle announced in Fievel v. Zuber, and of the correlated proposition that to support subrogation there must be an agreement to that end either expressed or implied. Merely paying the debt or advancing the money with which to pay it, standing alone, is not sufficient to effect subrogation.

■ One of the cases cited by appellees is Malone v. Kaufman, 38 Tex. 454, 455, which seems to hold that there can be no subrogation of the vendor's lien in favor of one who lends money with which to discharge it. That case was by the Reconstruction Court whose opinions are not treated as "authoritative exposition of the law." Taylor v. Murphy, 50 Tex. 291; see also 1 Tex.Jur., pp. XXXIII–XXXV and XLI. Moreover this particular holding is not supported by subsequent decisions.

■ Appellant further contends that if Tanecka did not in fact have a lien on the property, the representations of Tom that Tanecka did have such lien and that Louis would acquire it by lending the money to pay it off, constituted a fraud on Louis which would estop Tom from denying the existence of such lien. One complete answer to this contention lies in the fact that there was no claim, and there is no intimation in the record that Marie was a party to such fraud. She was not bound by Tom's acts, and her homestead estate in the property was in no way affected thereby. Martin v. Astin, Tex.Com.App., 295 S.W. 584.

**520**

There is one matter which the record presents to which neither party has alluded. Marie's homestead interest in the property constituted an estate therein, and this regardless of whether the legal title was in Tom, the community or herself. Woods v. Alvarado State Bank, 118 Tex. 586, 19 S.W.2d 35. When her father died Marie inherited ⅓ interest in the indebtedness of Tom to him and in any lien securing it. There was therefore an extinguishment of the lien to the extent of her ownership of the debt by merger thereof in her homestead estate.

The four years' statute of limitation was plead by appellees, and this issue was briefed by appellant. The only reference to this issue in appellees' brief reads: "The record does not show that the trial court decided the case on the question of limitation." In view of this statement we think it only necessary to add that the evidence would support a finding that neither the debt to Tanecka nor that to Louis was at any time barred by the four years' statute.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.