Johnnie W. HRUSKA and Wife Julia
M. Hruska, Appellants,

v.

FIRST STATE BANK OF DEANVILLE
and Brazosbanc Savings Association,
Appellees.

No 01–86–0367–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 19, 1987.
Rehearing Denied April 10, 1987.

733

Eugene J. Pitman, De Lange, Hudspeth, Pitman & Katz, Houston, for appellants.

J. Bradley Smith, Vance, Bruchez & Goss, Bryan, James R. Chapman, Jr., Batista & Chapman, P.C., Caldwell, for appellees.

Before EVANS, C.J., and SAM BASS and LEVY, JJ.

## OPINION

EVANS, Chief Justice.

The principal question in this case is whether the trial court properly determined that the appellants were estopped from asserting that a lien on their homestead was invalid. The trial court imposed the lien on the homestead in favor of First State Bank of Deanville to secure repayment of funds advanced for the construction of appellants' residence. Given the exceptional circumstances of the case, which include the existence of a confidential relationship and conduct giving rise to estoppel, we uphold the trial court's ruling, concluding that its decision was founded upon sound equitable grounds.

In February 1983, the appellants, Johnnie W. Hruska and his wife, Julia M. Hruska, jointly acquired the 5–acre tract by deed of gift from Mrs. Hruska's mother. In March 1983, the Hruskas built a garage facility, which contained a small living area, and in June 1983, they moved into the garage and a mobile trailer home. In late July 1983, the Hruskas decided to build a house on the property, and they applied to appellee BrazosBanc Savings Association for a construction loan. The bank's loan application, which was executed by both Mr. and Mrs. Hruska, provided that the loan would be evidenced by a promissory note and secured by an appropriate security instrument giving the lender a first lien on the property. BrazosBanc Savings Association issued a loan commitment to the Hruskas for permanent financing, but it refused to handle the interim loan, because the Hruskas' contractor was not on its list of approved contractors. The Hruskas then applied to First State Bank of Deanville for interim financing.

There was substantial disagreement about what occurred next during the parties' negotiations.

Mr. Larry Treybig, former vice-president of First State Bank of Deanville, handled

the transaction with the Hruskas. He testified that after the Hruskas received their loan commitment from BrazosBanc Savings Association, they came to his office to discuss interim financing with him. According to Mr. Treybig, the Hruskas knew from their discussions with BrazosBanc Savings Association that their attorney was to be responsible for handling the "paperwork," and the Hruskas stated that Mr. James A. Gray would act as their attorney. Mr. Treybig also testified that the Hruskas understood, before the First State Bank of Deanville advanced the interim construction funds, that the bank would have a security interest in the property.

Mr. Treybig testified that the Hruskas returned later and told him that "all the paperwork was done" and that their contractor would be making "draws" on the funds. (The Hruskas denied making any agreement or representations about any security interest of First State Bank of Deanville, but they did admit to their understanding that their property was to serve as collateral for a loan from BrazosBanc Savings Association.) Mr. Treybig further testified that the Hruskas were known and well-thought of by his bank, and that in reliance on their representation that the "paperwork" had been done, he advanced the money on the draws of the contractor as requested.

Mr. James R. Nelson, executive vice-president of First State Bank of Deanville, testified about the usual and customary procedures for handling loan transactions in his community. He said that in small towns, where the bank knew its customers very well, there was a very personal relationship between the bank and its customers, and that many transactions were based on trust. He said that in such circumstances, it was customary for the bank to approve a loan without a written loan application. He stated that it was also the custom for the loan applicant to have his own attorney prepare the necessary "paperwork," meaning the documents giving the bank a secured interest in the property constituting the collateral for the loan. He testified that the banks in his area usually did not have regular attorneys and therefore relied on the borrower and his attorney to see that the loan "paperwork" was completed.

On August 3, 1983, First State Bank of Deanville made the first loan advance to the Hruskas, and Mrs. Hruska signed a printed promissory note, which referred to the loan commitment letter of BrazosBanc Savings Association and promised to repay the amount of the advance. During the months that followed, First State Bank of Deanville made additional advances on the contractor's draw, increasing the Hruskas' indebtedness to some $82,000. Each of these advances was represented by a promissory note signed by one or the other of the Hruskas.

In late December 1983, BrazosBanc Savings Association began processing documents for the permanent loan, and it was then discovered that the Hruskas had not executed a mechanic's and materialman's lien contract. As a result of further negotiations, the Hruskas' attorney prepared a mechanic's and materialman's lien contract purporting to give the First State Bank of Deanville a security interest in the property. The Hruskas also executed the note in suit for the principal amount of $91,968.16, which was a consolidation of all prior indebtedness and accrued interest.

In June 1984, the Hruskas defaulted in the payment of their note, and First State Bank of Deanville brought this suit to recover its debt and foreclose the security interest, also alleging theories of unjust enrichment and estoppel. The Hruskas responded with a counterclaim against First State Bank of Deanville and a cross-action against BrazosBanc Savings Association, asserting that the lien was invalid because the property was their homestead. The Hruskas also asked actual and exemplary damages and cancellation of the recorded lien as a cloud on their title.

BrazosBanc Savings Association, in turn, filed a counterclaim agianst the Hruskas to recover the sum of $2,511.59, plus interest and attorney's fees, representing the principal balance due under an unsecured promissory note for funds used to construct a waterwell on the Hruskas' premis-

es. BrazosBanc Savings Association later filed a disclaimer of any security interest in the Hruskas' property.

The evidence was submitted to a jury, which found, among other facts, that the Hruskas falsely represented or concealed a material fact from First State Bank of Deanville and that this representation was made before any monies were advanced to the Hruskas; that the Hruskas represented to First State Bank of Deanville that a lien existed on their property in favor of the bank, in order to induce the bank to advance monies for the building of a residence on the property; that at the time such representation was made, the Hruskas knew or should have known that no lien contract had been executed; that the First State Bank of Deanville was misled by the Hruskas' representations, and would not have advanced the loan funds otherwise; and that the First State Bank of Deanville had no knowledge or reasonable means to know that the Hruskas had not executed the lien contract as represented.

On the jury's verdict, the trial court awarded a monetary judgment to First State Bank of Deanville against the Hruskas, jointly and severally, for the sum of $112,900.77, representing principal and interest due on the promissory note, plus attorney's fees in the amount of $17,500, and imposed a judgment lien against the property to secure payment of the $112,-900.77 award. The court also entered judgment in favor of BrazosBanc Savings Association against the Hruskas, jointly and severally, in the sum of $2,919.93, representing principal and interest due on that debt, plus $12,570 as attorney's fees.

The Hruskas' first six points of error challenge the legal sufficiency of the evidence to support the jury's findings and the trial court's judgment that the Hruskas were estopped to deny the validity of the lien of First State Bank of Deanville. In essence, the Hruskas contend that the undisputed evidence shows that they started construction of improvements on their occupied homestead before the execution of any lien contract, and therefore, that First State Bank of Deanville never acquired a

valid lien against their property. *See* Tex. Const. art. XVI, sec. 50, and Tex.Prop.Code Ann. secs. 41.002 et seq. (Vernon Supp. 1987).

First State Bank of Deanville concedes that it did not acquire a legal security interest in the Hruskas' property. But the bank argues that the circumstances of the case warrant the imposition of an equitable lien "based on rights and justice," as the court did in *Bray v. Curtis*, 544 S.W.2d 816, 819 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). In that case, the court held that an equitable lien was justified because of the relationship between the parties, the circumstances of their dealings, and their understanding and intent that the property would secure the payment of the debt. *Id.*

■ The Texas Constitution exempts a family's homestead from forced sale for the payment of all debts other than those specifically excepted from its provisions. Tex.Const. art. XVI, sec. 50. For example, the homestead protections may not apply if the debt is for work and materials furnished in constructing improvements on the homestead. *Id.* But a lien securing such a debt can exist on a homestead only when created in accordance with the provisions of the constitution expressly allowing them. *Fidelity Savings & Loan Ass'n v. Baldwin*, 416 S.W.2d 482 (Tex.Civ.App.—Beaumont 1967, writ ref'd n.r.e.). The constitution has been construed as requiring that to be valid, a mechanic's and materialman's lien contract must be executed before the materials are furnished and improvements are constructed. *See, e.g., Hill v. Engel*, 89 S.W.2d 219, 220 (Tex.Civ.App.—Waco 1935, writ ref'd); *Davis v. Peck, Wright, Peck Investment Co.*, 94 S.W.2d 1245 (Tex.Civ.App.—Amarillo 1936, writ dism'd). The appellants point out that this was not accomplished here and assert that consequently, any lien on their homestead was void.

■ The homestead and exemption laws were never intended to be the haven of wrongfully obtained money. *See Baucum v. Texam Oil Corp.*, 423 S.W.2d 434 (Tex. Civ.App.—El Paso 1967, writ ref'd n.r.e.).

Where, as here, the husband and wife have by their conduct led an innocent party to believe that a valid lien has been created on their homestead, and that party is induced to invest its funds on the faith and credit of such lien, then the husband and wife are estopped as to that party to plead that the lien is invalid. *United Savings Bank v. Frazier*, 116 S.W.2d 933, 939 (Tex.Civ.App. —Dallas 1938, writ dism'd); *see Davis*, 94 S.W.2d at 1247.

Additionally, the Hruskas expressly alleged that a confidential relationship existed between themselves and the two banks. This pleading constituted the Hruskas' judicial recognition that a relationship of trust and confidence existed between themselves and the banks, and their testimony is consistent with these pleaded assertions.

■■■ A confidential relationship may be shown outside of the usual case of partnership, attorney/client, or family relationship, *Thomson v. Norton*, 604 S.W.2d 473, 476 (Tex.Civ.App.—Dallas 1980, no writ), and may arise informally from moral, social, or personal relationships. *See Bush v. Stone*, 500 S.W.2d 885, 890 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). The term "fiduciary" includes those informal relations that exist whenever one party trusts and relies upon another. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502 (Tex. 1980).

■■■ Where equity imposes a confidential or fiduciary relationship, and one of the parties to the relationship obtains an advantage over the other, a presumption of unfairness arises. In such a case, it is the burden of the party obtaining the advantage to show that he acted fairly, and that he fully informed the other party of all material facts relating to the transaction. *Id.* at 509; *see Scott v. Weaver*, 2 S.W.2d 870 (Tex.Civ.App.—Austin 1927, writ dism'd). In the case at bar, the existence of a confidential relationship is undisputed; there was evidence that the bank relied on the Hruskas' representation that a valid lien had been created; and it is also clear that the Hruskas obtained a decided advantage over the First State Bank of Deanville.

The jury found that the Hruskas knew or had reason to know that the lien contract had not been executed, and that this fact was either misrepresented to or concealed from First State Bank of Deanville. There is legally sufficient evidence to support these findings. There was testimony showing that it was the custom in the area for the borrower's attorney to prepare the documentation to perfect the lender's security interest; that the Hruskas knew their property was to constitute collateral for the money loaned to them; that the Hruskas had been instructed that it was the responsibility of their own attorney to prepare the necessary paperwork; and that the bank had relied on the Hruskas' representation that the necessary paperwork had been completed and advanced the loan funds on that basis. The only direct testimony showing that the Hruskas agreed to give First State Bank of Deanville a lien on their property was that of Mr. Treybig. His testimony of their "understanding" was legally sufficient to establish their intent. *See Mikulenka v. Mikulenka*, 168 S.W.2d 517, 519 (Tex.Civ.App.—Austin 1943, no writ). We also hold that the evidence is legally sufficient to support the jury's findings that the Hruskas knew and misrepresented or concealed these material facts to induce the bank to release the loan funds.

Except in particular cases, our courts have refused to enforce liens against a homestead that were not created for purchase money or for improvements contracted for as allowed in the Texas Constitution. *Lincoln v. Bennett*, 138 Tex. 56, 156 S.W.2d 504, 505 (1941). But the Texas Supreme Court has acknowledged that a lien may be enforced against a homestead when the owners represent that an existing note is a valid mechanic's lien note for improvements, secured by a mechanic's lien contract properly executed. *Id.*

■■■ The circumstances of this case bring it within the exception noted in *Lincoln*. The evidence showed that the Hruskas assumed the affirmative responsibility of performing the "paperwork" necessary to perfect the bank's security interest in the

property. Because of the Hruskas' confidential relationship with the bank, they were duty bound to keep the bank properly informed regarding this affirmative undertaking. The Hruskas' false representation to the bank that the paperwork had been done, i.e., that the lien contract had been executed, is the kind of exceptional representation contemplated by the court in *Lincoln*. Thus, the trial court did not err in ruling that the Hruskas were estopped to deny the validity of the bank's security interest. The court acted properly, and within its equitable powers, in ordering a lien imposed against the Hruskas' property to secure repayment of the funds admittedly advanced for construction of the improvements.

We overrule the first six points of error.

The Hruskas' seventh and eighth points of error challenge the award of attorney's fees to BrazosBanc Savings Association. They contend in point seven that the evidence failed to segregate the time expended in prosecuting the suit on the promissory note from the time spent in defending against the Hruskas' counterclaim for damages and removal of cloud on title. The appellants claim that the attorney's fees related to the former action were allowable, but fees for the latter claim were not recoverable.

■ We overrule the Hruskas' contention. Their counterclaim was, in essence, a defense to the suit on the note, and the services required of the attorney for BrazosBanc Savings Association, in preparing its defense to the Hruskas' counterclaim, necessarily overlapped his efforts in preparing the suit on the note. Under the circumstances, the trial court did not err in allowing BrazosBanc Savings Association to recover for the legal services incurred in prosecuting its claim, even though the same services also related to its defense on the Hruskas' counterclaim. *See Schepps Grocery Co. v. Burroughs Corp.*, 635 S.W.2d 606 (Tex.App.—Houston [14th Dist.] 1982, no writ) (distinguishing *International Security Life Insurance Co. v. Finck*, 496 S.W.2d 544 (Tex.1973), and *Kosberg v. Brown*, 601 S.W.2d 414 (Tex.Civ.

App.—Houston [14th Dist.] 1980, no writ) (where the suits involved several distinct theories for which there was no overlap in preparation)).

We also overrule the Hruskas' contention that the judgment should be reversed on the ground of excessiveness, i.e., that the attorney's fees did not bear a reasonable relationship to the amount involved in the action on the note. As stated, the attorney for BrazosBanc Savings Association was required to meet the thrust of the Hruskas' counterclaim, which the Hruskas asserted in defense of the bank's suit on the note. Under the circumstances reflected by the record, we find that the amount of the award was not excessive.

In points of error nine and ten, the Hruskas assert that the trial court erred in rendering judgment against Mrs. Hruska, because she did not sign either of the two notes upon which suit was brought.

■ We also overrule this contention. Mrs. Hruska participated in both loan transactions, and she received the same benefits therefrom as her husband. She signed the original loan application and also signed several notes for advances made on the interim loan. She testified that she left the handling of business transactions to her husband, and the evidence is undisputed that he acted on her behalf in the loan transactions, as well as for himself.

Given their confidential relationship with the Hruskas, both First State of Deanville Bank and BrazosBanc Savings Association were entitled to rely on their understanding with the Hruskas that the loan funds would be advanced to the Hruskas' joint account and that the repayment of such funds would be the Hruskas' joint obligation. Although Mrs. Hruska did not personally sign either of the two notes, she actively participated with her husband in the loan transactions and received the loan proceeds in her joint account. As a general rule, one who knowingly partakes of the benefits of a fraudulent transaction is liable as a principal participant in the fraud. *See King v. Cliett*, 31 S.W.2d 350, 353 (Tex.Civ.App.—Waco 1930, writ ref'd). Un-

der the circumstances of the case, the court was authorized to render judgment against Mrs. Hruska to prevent her unjust enrichment. *See Hamblet v. Coveney*, 714 S.W.2d 126, 130–31 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

We accordingly hold that the trial court did not err in rendering judgment against Mrs. Hruska, and in granting the same relief against her as it imposed against her husband, Mr. Hruska.

In view of the conclusions expressed above, we need not decide whether Mrs. Hruska is deemed to have admitted execution of the notes, because of her failure to make a verified denial of execution pursuant to Tex.R.Civ.P. 93. In this respect, we note that the allegations contained in the petition filed by First State Bank of Deanville are inconsistent. The petition asserts in one place that the note was executed by the "defendant" and that a specified sum was due, owing, and unpaid from the "defendant," not specifying which of the two defendants is intended. Elsewhere, the petition states that the note was presented to the "defendants" and that the note was executed by the "defendants" to discharge their obligation for a series of notes previously executed. We further note that the petition of BrazosBanc Savings Association does not set forth all the essential terms of the note sued upon, nor does it incorporate such terms by attaching a copy of the note to its petition.

The ninth and tenth points of error are overruled.

In their eleventh point of error, the Hruskas contend that the trial court erred in allowing BrazosBanc Savings Association to ask Mr. Hruska, during cross-examination, why he had rejected an offer to enter into an agreed partial judgment clearing the title to his property. The Hruskas argue that this inquiry involved an offer of compromise that was inadmissible under Tex.R.Evid. 408, and that the question created an inference of impropriety on the part of the Hruskas. The record shows that the witness did not respond directly to the question, and replied that he "would have to talk to my lawyer about that."

The attorney for BrazosBanc Savings Association then asked the witness if the reason for his refusal of the offer was so that he could obtain a windfall benefit from the transaction. Mr. Hruska denied that that was the reason, but there was no objection to the suggestive question as being improper or prejudicial.

BrazosBanc Savings Association contends that the question about the offer was properly asked, because the Hruskas' stated position throughout trial was that the clouding of their title justified their refusal to repay the debt. It also argues that the question was pertinent to the issue of good faith, in view of the Hruskas' prayer for exemplary damages based on the proposition that BrazosBanc Savings Association deliberately and maliciously clouded their title.

■ The Hruskas did not object at trial that the question was improper because it involved an offer of compromise under Tex.R.Evid.R. 408. Their objection at trial was solely that the question was "irrelevant and immaterial" to any issue in the case. This was a general objection that does not, in the circumstances presented, suffice to preserve the claimed error. *See Wilkins v. Royal Indemnity Co.*, 592 S.W.2d 64 (Tex. Civ.App.—Tyler 1979, no writ); *Bridges v. City of Richardson*, 349 S.W.2d 644 (Tex. Civ.App.—Dallas 1961, writ ref'd n.r.e.). We further find that the inquiry, even if error, was not so prejudicial as to require a reversal of the trial court's judgment. Tex.R.Civ.P. 434. We accordingly overrule the Hruskas' eleventh point of error.

The judgment of the trial court is affirmed.