TRUSTEES OF THE NORTHWEST LAUNDRY AND DRY CLEANERS HEALTH & WELFARE TRUST FUND, Plaintiff–Appellee,

v.

Stanislaw R. BURZYNSKI, Defendant–Appellant.

No. 93–2071.

United States Court of Appeals, Fifth Circuit.

July 28, 1994.

---

Richard A. Jaffe, Houston, TX, for appellant.

Brad Beers, Hardin, Beers, Hagstette & Davidson, Houston, TX, for appellee.

Before WISDOM, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

WISDOM, Circuit Judge:

Today we write the latest chapter in a medical iconoclast's long history of litigation over an unorthodox cancer treatment. The district court granted summary judgment for the plaintiff/appellee, the Northwest Laundry and Dry Cleaners Health & Welfare Trust

Fund, an ERISA health insurance fund, after finding that the defendant/appellant, Dr. Stanislaw R. Burzynski, had defrauded the plaintiff and violated the terms of the health plan. We agree that the defendant may not trick the plaintiff into paying for an unlawful, unapproved drug. We AFFIRM.

## I.

### A. The Prior Litigation and Injunction

Dr. Stanislaw R. Burzynski is a Houston physician who developed an unorthodox treatment for cancer called "antineoplastons".[1] The antineoplastons treatment has never been approved by the Food and Drug Administration ("FDA") or the Texas Department of Health. Dr. Burzynski's antineoplastons treatment has been the subject of frequent litigation.[2]

In 1983, the United States sued Dr. Burzynski's research organization, the Burzynski Research Institute, alleging several violations of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. On May 24, 1984, Judge Gabrielle K. McDonald of the United States District Court for the Southern District of Texas partially granted the request of the United States for a permanent injunction. Judge McDonald's order prohibited Burzynski from distributing his antineoplastons treatment in interstate commerce, but did not forbid intrastate distribution of the drug.[3]

### B. The Antineoplastons Treatment of Huey Roberts

Huey Roberts, a resident of Oregon, developed cancer of the esophagus in 1986. Radiation treatments and chemotherapy did not reverse the progress of the disease. In 1988, Dr. Burzynski began administering a series of antineoplastons treatments to Roberts. After an initial series of treatments in Dr. Burzynski's Houston office, Roberts continued taking antineoplastons at his home in Oregon from a supply furnished by Dr. Burzynski. The antineoplastons treatments in Texas violated part of the Texas Food, Drug, and Cosmetic Act barring the use of any non-FDA-approved drug in Texas.[4] The treatments in Oregon violated the permanent injunction Judge McDonald imposed on Dr. Burzynski in 1984. These treatments apparently proved ineffectual, and Huey Roberts discontinued antineoplastons therapy on July 4, 1989.

Huey Roberts was a beneficiary under the health plan of plaintiff/appellee Northwest Laundry and Dry Cleaners Health & Welfare Trust Fund ("the Fund"). Dr. Burzynski submitted claim forms to the Fund and received over $90,000 in reimbursements for the treatments he administered to Roberts.

1. "Simply stated, antineoplastons are a special class of peptides, found in the blood, that combat neoplastons—abnormal cells or cancer cells." Gary Null, Gary Null's Complete Guide to Healing Your Body Naturally 95 (1988), attached to Def.'s Supplemental Mem. Supp. Mot. Dismiss or Change Venue, 3 Rec. 125.

2. In this Court alone, see In re Burzynski, 989 F.2d 733 (5th Cir.1993), modifying on rehearing Burzynski v. Aetna Life Ins. Co., 967 F.2d 1063 (5th Cir.1992); United States v. Burzynski Cancer Research Inst., 819 F.2d 1301 (5th Cir.), reh'g denied, 829 F.2d 1124 (5th Cir.1987), cert. denied, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988); Grider v. Transamerica Occidental Life Ins. Co., 979 F.2d 209 (5th Cir.1992) (table).

3. Judge McDonald's Final Judgment of Permanent Injunction was subject to the following proviso:

Nothing contained herein shall be construed as restraining, enjoining or in any way prohibiting the Defendant's manufacture, processing, packing, holding, promotion, labeling, sale or distribution of the antineoplaston A10 or of any similar article however designated (provided articles are not falsely labeled or marked) when that manufacture, processing, packing, holding, promotion, labeling, sale or distribution is undertaken strictly and wholly intrastate.

4. See Tex.Health & Safety Code Ann. § 431.114. This statute provides, in pertinent part, that

(a) A person shall not sell, deliver, offer for sale, hold for sale or give away any new drug unless:
(1) an application with respect thereto has been approved and the approval has not been withdrawn under Section 505 of the federal Act; and
(2) a copy of the letter of approval or approvability issued by the Federal Food and Drug Administration is on file with the commissioner if the product is manufactured in this state.

The district court found that antineoplastons was a "new drug" within the meaning of § 431.114, and Dr. Burzynski does not contest the finding on appeal.

When the Fund learned that it had reimbursed Dr. Burzynski for illegal treatments, it brought this lawsuit in Oregon state court to try to get its money back. The Fund charged Dr. Burzynski with fraud and with violations of ERISA[5] and RICO.[6] Dr. Burzynski, invoking diversity jurisdiction, removed the case to the United States District Court for the District of Oregon, and on his motion for a change of venue, the case was transferred to the United States District Court for the Southern District of Texas.

On cross-motions for summary judgment, the district court entered summary judgment for Dr. Burzynski on the Fund's RICO claims and for the Fund on its fraud and ERISA claims. Dr. Burzynski appealed.

## II.

### A. The Fund's ERISA Claim

■■■ The ERISA plan under which Roberts was covered provided that:

When medically necessary treatment is provided by a legally qualified physician for an illness or injury, and that physician is practicing within the scope of his license, payment will be made for expenses incurred for Hospital, Home and Office visits as shown in the Schedule of Benefits.[7]

To be "medically necessary" under the Plan, a treatment must meet two requirements, measured under Oregon law. First, the treatment must be "appropriate and consistent with the diagnosis (in accord with accepted standards of community practice)". Second, "medically necessary" treatments "could not be omitted without adversely af-

fecting the covered person's condition or the quality of medical care".[8]

Dr. Burzynski correctly points out that these requisites do not, by their express terms, hold all non-FDA-approved treatments medically "unnecessary". An Oregon court, however, construed nearly identical language in an insurance contract to bar coverage of an experimental cancer treatment. In *Jacob v. Blue Cross & Blue Shield of Oregon,*[9] the insurance contract defined "medically necessary" as treatment that

[i]s appropriate and consistent with the diagnosis and which in accordance with accepted medical standards in the State of Oregon could not have been omitted without adversely affecting the patient's condition or the quality of medical care rendered[.][10]

Under that definition, the court held that the contract did not cover the insured's "Gerson therapy" or "immuno-augmentive therapy", two unorthodox cancer treatments. The court noted that the treatments had "not been approved by the appropriate government agencies" and were "not in accordance with accepted medical standards".[11] Accordingly, it concluded that the cancer treatments were not covered under the contract and upheld the trial court's summary judgment for the insurer.

We find the *Jacob* court's reasoning persuasive and its conclusion sound. Dr. Burzynski's antineoplastons treatment had not been approved by the FDA, nor by the Texas Department of Health, and was not in accordance with accepted medical standards.[12]

5. Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461.

6. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

7. A Group Health Program For Members Covered By The Northwest Laundry & Dry Cleaners Trust, Class 8, at 19, 2 Rec. 504.

8. *Id.* at 25, 2 Rec. 501. Although this definition appears in a different section of the plan from the first quoted passage, we must read the plan, like any other contract, as a whole, giving effect to every provision thereof. *See Grider v. Transamerica Occidental Life Ins. Co.,* 979 F.2d 209 (5th Cir.1992) (table), manuscript opinion at 6–7 (citing *Ross v. Western Fidelity Ins. Co.,* 872 F.2d

665, 668 (5th Cir.), *opinion clarified on reh'g,* 881 F.2d 142 (5th Cir.1989); *D.E.W., Inc. v. Laborers' Int'l Union,* 957 F.2d 196, 200 (5th Cir.1989)).

9. 92 Or.App. 259, 758 P.2d 382 (1988).

10. *Id.,* 92 Or.App. at 261–62, 758 P.2d at 383. There also was a second contract involved in the *Jacob* case that contained a nearly identical definition of "medically necessary". *See id.*

11. *Id.,* 92 Or.App. at 262, 758 P.2d at 383.

12. *See Burzynski v. Aetna Life Ins. Co.,* 967 F.2d 1063, 1064 (5th Cir.1992), *modified on reh'g, In re Burzynski,* 989 F.2d 733 (5th Cir.1993), noting the opposition of various professional groups to

Accordingly, the treatments were not "medically necessary" as the Plan defines that term. We uphold the district court's summary judgment for the Fund on the Fund's ERISA claim.

## B. The Fund's Fraud Claim

The district court held that Dr. Burzynski defrauded the Fund by, inter alia, materially misrepresenting the legality of his antineoplastons treatment. After Judge McDonald's 1984 injunction, Dr. Burzynski was on notice that interstate use of antineoplastons violated federal law. The portion of the Texas Health & Safety Code barring use or sale of non-FDA-approved drugs in Texas [13] put Dr. Burzynski on notice that *intrastate* distribution of antineoplastons was also illegal. Accordingly, Dr. Burzynski was on notice that both the intrastate and interstate applications of antineoplastons in Huey Roberts's case were illegal. It is this illegality that the Fund charges Dr. Burzynski fraudulently withheld from it. Dr. Burzynski admitted that he never disclosed to the Fund that his antineoplastons A and B treatments were not approved by the FDA. The question, then, is whether the district court correctly ruled that this omission constituted fraud.

■■■ We begin with some basic principles. Texas law defines fraud as the "misrepresentation of a material fact with intention to induce action or inaction, reliance on the misrepresentation by a person who, as a result of such reliance, suffers injury".[14] A defendant's failure to disclose a material fact is fraudulent only if the defendant has a duty to disclose that fact.[15] A duty to speak can arise by operation of law or by agreement of the parties. In the absence of an agreement, there must be some special relationship between the parties, such as a fiduciary or confidential relationship, before a duty to disclose arises.[16] The nondisclosing party must have had knowledge of the facts it withheld.[17] Even without a special relationship, there is always a duty to correct one's own prior false or misleading statement.[18] A speaker who makes a partial disclosure assumes a duty to tell the whole truth even when the speaker was under no duty to make the partial disclosure.[19]

### 1. Knowledge

Several of Dr. Burzynski's arguments challenge the district court's finding that he knew his antineoplastons treatment was illegal. He asserts that (1) Judge McDonald's injunction authorized the use of antineoplastons in Texas; (2) intrastate distribution of antineoplastons is authorized by the Texas Medical Practice Act; (3) he cannot be held to have known that antineoplastons were illegal because no Texas court has ever so decreed; and (4) the district court applied the

antineoplastons therapy. *See also* 2 Rec. 398, 400 (Pl.'s Mot.Summ.J. & Rep.Def.'s Mot. Summ.J., Ex. R), noting opposition of FDA and American Cancer Society.

13. *See* Tex.Health & Safety Code Ann. § 431.114.

14. 41 Tex.Jur.3d *Fraud and Deceit* § 7 (1985) (footnotes omitted); *see also Roberts v. United N.M. Bank*, 14 F.3d 1076, 1078 (5th Cir.1994).

15. *See, e.g., Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986); *Bernstein v. Portland Sav. & Loan Ass'n*, 850 S.W.2d 694, 701 (Tex.App.—Corpus Christi 1991, writ denied).

16. *Stephanz v. Laird*, 846 S.W.2d 895, 904 (Tex. App.—Houston [1st Dist.] 1991, writ denied). The relationship giving rise to a duty to disclose may be either fiduciary *or* confidential in character; it does not require a strict fiduciary relationship in all cases. *See, e.g., Lang v. Lee*, 777 S.W.2d 158, 164 (Tex.App.—Dallas 1989, no writ) (relationship of "trust or confidence");

*Southwestern Indem. Co. v. Cimarron Ins. Co.*, 334 S.W.2d 831, 833 (Tex.Civ.App.—Waco 1960) (same), *rev'd on other grounds*, 161 Tex. 516, 344 S.W.2d 442 (1961).

17. *HTM Restaurants, Inc. v. Goldman, Sachs & Co.*, 797 S.W.2d 326, 329 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

18. *See, e.g., Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 635 (Tex.App.—San Antonio 1993, writ denied); *Tempo Tamers, Inc. v. Crow-Houston Four, Ltd.*, 715 S.W.2d 658, 669 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

19. *Boggan v. Data Sys. Network Corp.*, 969 F.2d 149, 154 & n. 6 (5th Cir.1992); *Southeastern Fin. Corp. v. United Merchants & Mfrs., Inc.*, 701 F.2d 565, 566–67 (5th Cir.1983); *International Sec. Life Ins. Co. v. Finck*, 475 S.W.2d 363, 370 (Tex. Civ.App.—Amarillo 1971), *aff'd in part, rev'd in part on other grounds*, 496 S.W.2d 544 (Tex. 1973).

wrong standard of scienter to the Fund's fraud claim. Because Dr. Burzynski's latter two challenges verge on the frivolous, we will discuss only the first two.

■ Dr. Burzynski acknowledges that Judge McDonald's 1984 injunction barred him from interstate distribution of the drug. He argues, however, that Judge McDonald authorized him to distribute antineoplastons in Texas. As did the district court, we find this argument unpersuasive. Judge McDonald limited the injunction to barring interstate distribution. Although the injunction did not forbid intrastate distribution, neither did it excuse Dr. Burzynski from compliance with state laws governing intrastate distribution of antineoplastons. The injunction simply is silent on the legality of intrastate distribution.

■ Dr. Burzynski next asserts that, even if § 431.114 of the Texas Health & Safety Code bars intrastate distribution of antineoplastons, that bar is superseded by § 5.09 of the Texas Medical Practices Act ("TMPA"),[20] which provides:

> A physician licensed to practice medicine under this Act may supply patients with any drugs, remedies, or clinical supplies as are necessary to meet the patient's immediate needs. This subsection does not permit the physician to operate a retail pharmacy without first complying with the Texas Pharmacy Act....

Dr. Burzynski argues—and a state administrative law judge recently agreed[21]—that the reference to "any drug" in the quoted text *includes illegal drugs* prohibited by the Texas Health & Safety Code. On our *de novo* review of state law, we follow the dis-

trict court in rejecting this interpretation of the TMPA. Read as a whole, TMPA § 5.09 plainly is intended to authorize physicians to dispense drugs when urgent necessity precludes resort to a pharmacy. It does not clearly authorize anyone to dispense *illegal* drugs. We must read TMPA § 5.09 in harmony with Health & Safety Code § 431.114.[22] Reading the statutes together, we cannot conclude that TMPA § 5.09 authorizes Dr. Burzynski to do anything forbidden by Health & Safety Code § 431.114.

### 2. Duty to Disclose

■ Two things are clear. The antineoplastons treatments administered to Huey Roberts in Texas and in Oregon were illegal, and Dr. Burzynski knew or should have known it. To uphold the district court's judgment on the Fund's claim of fraud, we must additionally decide that Dr. Burzynski had a duty to disclose to the Fund the illegality of the antineoplastons treatments. For three reasons, we conclude that he did.

■ First, Dr. Burzynski had a confidential relationship with the Fund. A confidential relationship includes "every form of relation between parties wherein confidence is reposed by one in another, and he relies and acts upon the representations of the other and is guilty of no derelictions on his own part".[23] It is an equitable concept that includes informal relationships outside the customary examples of partnerships, attorney/client relations, or familial relations.[24] The Fund customarily relied, and was equitably entitled to rely, on Dr. Burzynski's representations as to the legality of his treat-

---

20. Tex.Rev.Civ.Stat.Ann. art. 4495b.

21. *See In re Burzynski*, no. 503–92–529 (Texas State Office of Administrative Hearings, Mar. 10, 1994). The state ALJ's ruling was issued after this case was orally argued in this Court.

22. *See* Tex.Gov't Code Ann. § 311.026; *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 370, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986).

23. *Peckham v. Johnson*, 98 S.W.2d 408, 416 (Tex. Civ.App.—Fort Worth 1936), *aff'd*, 132 Tex. 148, 120 S.W.2d 786 (1938) (quoted in *Boggan*, 969

F.2d at 154 n. 5). *See also Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 624 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Thames v. Johnson*, 614 S.W.2d 612, 614 (Tex.Civ.App.—Texarkana 1981, no writ).

24. *In re Monnig's Dep't Stores, Inc.*, 929 F.2d 197, 201 (5th Cir.1991); *Hruska v. First State Bank*, 727 S.W.2d 732, 736 (Tex.App.—Houston [1st Dist.] 1987) (confidential relationships include "moral, social, or personal relationships"), *aff'd in part, rev'd in part on other grounds*, 747 S.W.2d 783 (Tex.1988).

ment.[25] Obviously, Dr. Burzynski had superior knowledge concerning the legality of his treatment, and knew that the Fund would have acted differently had it been aware that antineoplastons therapy was illegal. In such circumstances, Dr. Burzynski's duty to disclose is clear.[26] Dr. Burzynski's failure to disclose the illegality of antineoplastons treatment breached his confidential relationship with the Fund and gave rise to a claim of fraud in the Fund's favor.

Second, Dr. Burzynski's partial disclosures to the Fund imposed a duty on him to make such additional disclosures as would remove the false or misleading character of his partial disclosures.[27] The claims forms Dr. Burzynski submitted to the Fund represented that "chemotherapy" was being administered to Huey Roberts. Considering that many perfectly legal forms of chemotherapy are employed in fighting cancer, the omission of the fact that this was not ordinary chemotherapy, but an unapproved drug that could not be lawfully administered in Texas or Oregon, was misleading.[28]

Finally, at the risk of laboring the obvious, Dr. Burzynski is a practicing physician, a trained professional licensed by the State of Texas. The practice of medicine in Texas is a privilege, not a right.[29] Among the prices the State exacts for the exercise of that privilege is that physicians hold themselves to a standard of ethical conduct befitting their position. For example, physicians may find themselves subject to disciplinary action for

> unprofessional or dishonorable conduct that is likely to deceive or defraud the public or injure the public.... includ[ing] but not limited to the following acts:
>
> (A) committing any act that is in violation of the laws of the State of Texas if the act is connected with the physician's practice of medicine.[30]

This is a salutary policy. We would damage it if we held that Dr. Burzynski was free to defraud a health insurer by obtaining reimbursement for illegally administered treatment. In conjunction with the other factors just mentioned, Dr. Burzynski's ethical responsibility as a physician supports the conclusion that he had a duty to disclose the illegality of the antineoplastons treatment.

Because we conclude that Dr. Burzynski failed to disclose the illegality of his antineoplastons treatment to the Fund when he had a duty to do so, we uphold the district court's judgment on the Fund's claim of fraud. We need not address the other grounds offered by the plaintiff for affirming the district court, such as Dr. Burzynski's alleged misrepresentations as to the location of the treatment.

### III.

We close by echoing the concluding thoughts of the late Judge Alvin Rubin in one of the previous lawsuits involving Dr. Burzynski.[31] Cancer victims, such as Huey Rob-

---

25. We do not address whether the Fund would have been entitled to rely on representations by Dr. Burzynski *other than* those implicating the legality of antineoplastons treatment.

26. *See, e.g., Susanoil, Inc. v. Continental Oil Co.,* 519 S.W.2d 230, 236 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.); *Chandler v. Butler,* 284 S.W.2d 388, 398 (Tex.Civ.App.—Texarkana 1955, no writ); *cf. Moore & Moore Drilling Co. v. White,* 345 S.W.2d 550, 555–56 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.); *accord Mann v. Adams Realty Co.,* 556 F.2d 288, 297 (5th Cir. 1977) (applying Alabama law); *American Nat'l Ins. Co. v. Murray,* 383 F.2d 81, 86–87 (5th Cir.1967) (applying Mississippi law).

27. *See supra* notes 18–19 and accompanying text.

28. Dr. Burzynski's brief argues that the abbreviation "ANPA" on the claims forms submitted to the Fund should be understood as a direct disclosure that he had been administering antineoplastons to Huey Roberts. The full description of service Dr. Burzynski entered in the claim forms reads: "High Dose ANPA chemotherapy IV drip". Try as we might, we are unable to read those words to make a sufficient disclosure that Dr. Burzynski sought reimbursement for the knowing illegal use of an unapproved drug, not ordinary "chemotherapy".

29. Tex.Rev.Civ.Stat.Ann. art. 4495b § 1.02(1).

30. *Id.* § 3.08(4).

31. *See United States v. Burzynski Cancer Research Inst.,* 819 F.2d 1301, 1315 (5th Cir.), *reh'g denied,* 829 F.2d 1124 (5th Cir.1987), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988).

erts, often are understandably eager to pursue any course of treatment, whatever its cost or efficacy, that offers the faintest hope of preserving life. Their plight commands sympathy, but also attracts opportunists. The State of Texas and the Federal Food and Drug Administration have stepped in to protect cancer patients from those who would prey on their vulnerability. While we do not impute evil motives to Dr. Burzynski, neither can we conclude that he is beyond the laws written to protect his patients. When he oversteps their bounds, the resulting costs are his to bear.

The district court's judgment is AFFIRMED.