BME v. BURZYNSKI2 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00222-CV







Texas State Board of Medical Examiners, Appellant



v.



Stanislaw R. Burzynski, M.D., Ph.D., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 94-12915, HONORABLE PAUL DAVIS, JUDGE PRESIDING







 Appellant Texas State Board of Medical Examiners ("the Board") ordered that
appellee Dr. Stanislaw Burzynski's license to practice medicine be suspended and that such
suspension be stayed with Dr. Burzynski being placed on probation for ten years under certain
conditions. (1) Upon judicial review of the Board's order, the district court reversed the order in
its entirety and dismissed the cause. In two points of error, the Board asserts that the trial court
erred in finding that TMPA section 5.09(a) authorizes Dr. Burzynski's use of antineoplastons in
Texas and that the false advertising statute is unconstitutional. We will reverse the judgment of
the trial court and render judgment in accordance with the order of the Board.



BACKGROUND


 This case arises from an unorthodox treatment for cancer called "antineoplastons"
that Dr. Burzynski has worked to develop since he was in medical school in the sixties. (2) Dr.
Burzynski, licensed to practice medicine in Texas, has been the subject of frequent litigation as
a result of these antineoplastons, which are not approved for commercial interstate marketing by
the Federal Food and Drug Administration ("FDA"). 

 In 1977, Dr. Burzynski left his position as a laboratory researcher at the Baylor
College of Medicine. After satisfying himself as to the legality of his treatment, Dr. Burzynski
turned down a faculty position at the University of Tennessee and its corresponding research
grant, opened a laboratory in Houston, Texas, and went into private practice using antineoplastons
in his treatment of cancer patients. 

 In 1983, the FDA obtained an injunction from a federal district court prohibiting
Dr. Burzynski and the Burzynski Research Institute from shipping antineoplastons in interstate
commerce without first obtaining the approval of the FDA. See United States v. Burzynski Cancer
Research Inst., No. H-83-2069 (S.D. Tex. May 24, 1983)(order granting permanent injunction). 
The injunction, however, did not preclude intrastate distribution of the antineoplastons. 

 In 1986, the Board notified Dr. Burzynski that it was concerned about his
antineoplaston treatment and about whether his drug was actually safe and therapeutic to patients. 
Dr. Burzynski and the Board entered into an affidavit agreement under which the Board was
supplied with partial medical records of some of Dr. Burzynski's patients. Two oncologists
reviewed these records, covering approximately 60 patients, and were unable to conclude with any
certainty that Dr. Burzynski's patients benefitted from the antineoplastons. (3) 

 In May 1988, the Texas Department of Health informed Dr. Burzynski by letter
that his use of antineoplastons violated section 18 of the Texas Health & Safety Code. (4) Soon after
receiving a copy of the letter, the Board initiated this administrative proceeding. 

 Dr. Burzynski was charged by the Board with three types of misconduct in four
counts. Counts I and II alleged that Dr. Burzynski's use of antineoplastons violated section 18
of the Health & Safety Code which also constitutes a violation of section 3.08(4)(A) of the TMPA. 
Count III charged Dr. Burzynski with violating the false advertising statute in addition to
committing false advertising in violation of TMPA sections 3.08(6) and 3.08(4)(A). Count IV
charged Dr. Burzynski with collecting a fee for his treatment in violation of federal regulations
and TMPA section 3.08(4)(G). 

 Hearings began on May 24, 1993, and at their conclusion, an administrative law
judge issued a Proposal for Decision, finding for Dr. Burzynski on Counts I, II and IV and for
the Board on Count III in part. The administrative law judge essentially found that it is and
always has been legal for Dr. Burzynski to administer antineoplastons to his patients in Texas. Despite the Proposal for Decision, the Board issued its own findings of facts and
conclusions of law and concluded that it is and always has been illegal for Dr. Burzynski to use
his antineoplastons in Texas because TMPA section 5.09 does not allow physicians to prescribe
drugs that have not been approved by the FDA.

 Upon judicial review, the district court found the Board's order "in violation of
constitutional and statutory provisions, affected by other error of law, and arbitrary and capricious
or characterized by abuse of discretion or clearly unwarranted exercise of discretion," reversed
it in its entirety, and dismissed the cause.



 DISCUSSION
 

 In its first point of error, the Board asserts that the trial court erred in finding that
TMPA section 5.09(a) authorizes Dr. Burzynski's use of antineoplastons. The Board contends
that it is and always has been illegal for Dr. Burzynski to use his medicines in Texas and that
section 5.09(a) does not allow physicians to prescribe non-FDA approved drugs. First, the Board
asserts that, if Dr. Burzynski's interpretation of section 5.09(a) is correct, there is no need for an
FDA, for rules and regulations pertaining to FDA approval of drugs, or for any regulation of a
physician's drug practices. 

 Second, the Board argues that Dr. Burzynski and the trial court failed to consider
the complete text of section 5.09(a). The Board asserts that the section was enacted to authorize
physicians to supply necessary drugs, remedies or clinical supplies, including pharmaceutical
samples, for immediate patient needs without requiring the physician to fully comply with the
Texas Pharmacy Act. (5) According to the Board, the section was not intended to allow physicians
to supply patients with drugs that are not FDA-approved. 

 In response, Dr. Burzynski claims that the trial court correctly concurred with the
administrative law judge and that Dr. Burzynski is permitted to use antineoplastons on his own
patients in Texas. First, Dr. Burzynski points out that the FDA only governs the interstate
commercial distribution of drugs and cannot regulate or limit the drugs a licensed physician can
prescribe. Dr. Burzynski notes that Congress did not intend the FDA to interfere with the medical
practice of treating patients and argues that this is why a federal district court, in 1983, refused
to enjoin him from prescribing his medicine to his patients in Texas. 

 Second, Dr. Burzynski argues that section 5.09(a) provides all physicians with the
legal right to administer any drug or remedy to meet immediate patient needs. Dr. Burzynski
notes that it is constitutionally permissible for a court to depart from the plain language of a statute
only if necessary to avoid an absurd result. 

 Finally, Dr. Burzynski contends that the Board incorrectly asserts that the trial
court's interpretation of section 5.09(a) would prevent the Board from protecting the public
because a licensed physician could then prescribe without regulation any drug, FDA-approved or
not, to any patient. Dr. Burzynski points out that the Board can still protect the public because,
upon a finding that a drug is non-therapeutic or that a physician administered the drug in a manner
not consistent with the public health, the Board can discipline such a physician and prohibit the
use of any drug under the authority of TMPA section 3.08 (E) and (F). Noting that undisputed
testimony from physicians and patients showed that his treatment actually works, Dr. Burzynski
argues that the Board did not assert a violation of these sections in this case because they could
not do so with any success.

 Under the subtitle "Authority to Supply Drugs," section 5.09 provides in pertinent
part that:



(a) A physician licensed to practice medicine under this Act may supply patients
with any drugs, remedies, or clinical supplies as are necessary to meet the
patients' immediate needs. This subsection does not permit the physician to
operate a retail pharmacy without first complying with the Texas Pharmacy
Act.


(b) Nothing in this section shall prohibit the physician from supplying
pharmaceutical samples to the patient, free of charge, if, in the opinion of the
physician, it is advantageous to the patient, in adhering to a course of
treatment prescribed by the physician, to receive such pharmaceutical
samples. 


 . . .


(c) A licensed physician who practices medicine in a rural area in which there is
no pharmacy may maintain a supply of dangerous drugs in the office of the
physician to be dispensed in the course of treating the physician's patients and
may be reimbursed for the cost of supplying those drugs without obtaining a
license under the Texas Pharmacy Act.



Tex. Rev. Civ. Stat. Ann. art. 4495b, § 5.09 (a-c) (West Supp. 1996)(emphasis added).

 Read as a whole, section 5.09 is concerned with physicians' compliance with the
Texas Pharmacy Act and does not authorize physicians to dispense unauthorized drugs. Rather,
section 5.09 was intended to allow a physician to supply drugs to a patient in immediate need
without violating the provisions of the Texas Pharmacy Act. Section 19(c) of the Texas Pharmacy
Act provides that "[t]his Act does not apply to a practitioner licensed by the appropriate state
board who supplies his patients with drugs in a manner authorized by state or federal law and who
does not operate a pharmacy for the retailing of prescription drugs." Tex. Rev. Civ. Stat. Ann.
art 4542a-1, § 19(c) (West 1996). TMPA section 5.09 simply sets forth the manner by which
Texas authorizes a practitioner to supply his patients with drugs absent a license under the Texas
Pharmacy Act. 

 Section 431.114 of the Health & Safety Code provides in pertinent part that:



(a) A person shall not sell, deliver, offer for sale, hold for sale or give away any
new drug unless:


 (1) an application with respect thereto has been approved and the approval has
not been withdrawn under Section 505 of the federal Act; and 


 (2) a copy of the letter of approval or approvability issued by the Federal
Food and Drug Administration is on file with the commissioner if the
product is manufactured in this state. 



Tex. Health & Safety Code Ann. § 431.114 (West 1992).

 Section 431.114 sets forth the requirements which a physician must meet in order
to "sell, deliver, offer for sale, hold for sale or give away any new drug . . . ." In Northwest
Laundry, the Fifth Circuit concluded that TMPA section 5.09 must be read in harmony with
section 431.114 of the Health & Safety Code and accordingly rejected the exact argument that Dr.
Burzynski repeats in this case. Northwest Laundry, 27 F.3d at 158; see Tex. Gov't Code Ann.
§ 311.026(a) (West 1988) ("If a general provision conflicts with a special or local provision, the
provisions shall be construed, if possible, so that effect is given to both."). The Fifth Circuit
stated that "[r]eading the statutes together, we cannot conclude that TMPA § 5.09 authorizes Dr.
Burzynski to do anything forbidden by Health & Safety Code § 431.114." Northwest Laundry,
27 F.3d at 158. According to the Fifth Circuit, when read as a whole, TMPA section 5.09 was
only intended to authorize physicians to dispense drugs when urgent necessity precludes resort to
a pharmacy. Id. 

 After meeting the requirements of section 431.114 of the Health & Safety Code,
a physician may then supply such a drug to a patient without complying with the Texas Pharmacy
Act as authorized by TMPA section 5.09, but only to meet a patient's immediate needs. The
Texas Administrative Code defines "immediate needs" as "[t]he amount of a prescription drug
needed for the proper treatment of a patient until access to a pharmacy is possible." 22 Tex.
Admin. Code § 169.2 (West 1995). (6) This definition of "immediate needs," by itself, further
supports the proposition that TMPA section 5.09 was solely intended to provide physicians with
authority to supply drugs to patients without being licensed as pharmacists under the Texas
Pharmacy Act; it does not authorize the distribution of drugs which are not FDA-approved. 

 Dr. Burzynski acknowledges that, in 1983, a federal district court permanently
enjoined him from shipping his antineoplastons in interstate commerce. However, Dr. Burzynski
points to the fact that the federal court refused to enjoin him from prescribing his medicine to his
patients in Texas and argues that, by this refusal, the federal court authorized his distribution of
antineoplastons in Texas.

 The Fifth Circuit also addressed this argument in Northwest Laundry. The court
found that the federal injunction in that case, which is the same injunction with which we are
dealing, was simply silent on the legality of intrastate distribution of antineoplastons. Northwest
Laundry, 27 F.3d at 158. "Although the injunction did not forbid intrastate distribution, neither
did it excuse Dr. Burzynski from compliance with state laws governing intrastate distribution of
antineoplastons." Id.

 We are not concerned with how long section 431.114 of the Health & Safety Code
has been in existence or whether it has been previously applied to restrict a physician's decision
regarding patient care. The Board appropriately read section 431.114 in harmony with TMPA
section 5.09 and correctly found that TMPA section 5.09 does not authorize Dr. Burzynski to
distribute drugs that have not been approved by the FDA. Further, in its 1983 injunction, the
federal district court, by failing to enjoin Dr. Burzynski from distributing his antineoplastons in
Texas, did not authorize such distribution under state law. We hold that the trial court erred in
finding that TMPA section 5.09 authorizes Dr. Burzinski's use of antineoplastons, and
accordingly, we sustain the Board's first point of error. 

 In its second point of error, the Board claims that the trial court erred in holding
the false advertising statute unconstitutional. (7) The Board argues that chapter 431 of the Health
and Safety Code fulfills a narrow governmental purpose of protecting the health and safety of
Texas citizens from individuals or entities that would mislead or make false representations about
their drugs or devices. According to the Board, this statute does not restrict what a doctor may
tell a patient in the course of prescribing a treatment, a doctor's ability to advertise generally, or
a doctor's ability to write to other members of the medical profession in scientific journals or
other similar publications. The Board further contends that the statute in no way restricts pure
speech and that it does not infringe upon any legitimate rights of Dr. Burzynski or of any other
health care provider. 

 Dr. Burzynski argues that there are three constitutional problems with the false
advertising statute. First, Dr. Burzynski claims that the statute is facially overbroad because, in
its attempt to restrict some forms of commercial speech, it actually prohibits many forms of
protected pure speech. Second, even assuming Dr. Burzynski's representations are considered
pure commercial speech, Dr. Burzynski asserts that professionals, such as himself, cannot be
prohibited from making direct mail solicitations which contain truthful and non-deceptive
representations. Third, Dr. Burzynski claims that the State has not met its burden of proof
regarding the existence of a reasonable fit between a legitimate governmental interest and the
restrictions imposed by the statute.

 We must first determine whether the expression at issue is commercial speech. The
test for identifying commercial speech is whether the brochure and articles Dr. Burzynski
distributes to patients and prospective patients "propose a commercial transaction." Board of
Trustees of the State Univ. of New York v. Fox, 492 U.S. 469, 473 (1989)(quoting Virginia State
Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 762 (1976)). After
explaining that "[t]he majority of cancer patients treated in [the Burzynski Research] Institute
showed positive response to treatment" and that the "therapy is producing long-term remission in
a number of patients," Dr. Burzynski's brochure contains several sections, some of which are
titled: "Cost of Antineoplaston Treatment and Other Expenses," "Insurance," "How to Make an
Appointment," "Accommodations," "Traveling to Houston," and "What to Expect Upon Arriving
at the Clinic." This brochure, coupled with the various articles distributed by Dr. Burzynski,
clearly proposes a commercial transaction and thus constitutes commercial speech. 

 Thus, concluding that Dr. Burzynski is engaged in commercial speech, we
acknowledge that the free flow of commercial information is critical in a free enterprise system. 
See Rubin v. Coors Brewing Co., 514 U.S. ___, 115 S. Ct. ___, 131 L. Ed 2d 532, 538
(1995)(citing Virginia State Bd. of Pharmacy, 425 U.S. at 763). Because of the nature of
commercial speech, however, certain types of restrictions are tolerable. Id. (citing Virginia State
Bd. of Pharmacy, 425 U.S. at 770). In determining whether a regulation of commercial speech
survives First Amendment scrutiny, we look to the factors set forth in Central Hudson Gas &
Electric Corporation v. Public Service Commission, 447 U.S. 557 (1980). 



For commercial speech to come within [the First Amendment], it at least must
concern lawful activity and not be misleading. Next, we ask whether the asserted
governmental interest is substantial. If both inquiries yield positive answers, we
must determine whether the regulation directly advances the governmental interest
asserted, and whether it is not more extensive than is necessary to serve that
interest. 


Central Hudson, 447 U.S. at 566.

 In this case, Dr. Burzynski's commercial speech does not concern a lawful activity. 
The FDA has not approved an application for Dr. Burzynski's new drug. Further, because he has
not obtained such approval, Dr. Burzynski has failed to file a copy of a letter of approval or
approvability with the commissioner. As set forth above, section 431.114 of the Health & Safety
Code requires these two things before a person shall "sell, deliver, offer for sale, hold for sale
or give away any new drug." Accordingly, Dr. Burzynski's failure to meet these requirements
is a violation of section 431.114.



The First Amendment's concern for commercial speech is based on the
informational function of advertising. Consequently, there can be no constitutional
objection to the suppression of commercial messages that do not accurately inform
the public about lawful activity. The government may ban forms of
communication more likely to deceive the public than to inform it or commercial
speech related to illegal activity.



Central Hudson, 447 U.S. at 563-64 (citations omitted). Because Dr. Burzynski's speech
concerns an illegal activity, he is not entitled to First Amendment protection.

 Further, it is well recognized that a court should not pass upon a statute's validity
based solely upon the complaint of one who fails to show that he is injured by its operation. 
Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 347 (1936); Tri-Steel Structures, Inc. v.
Hackman, 883 S.W.2d 391, 396 (Tex. App.--Fort Worth 1994, writ denied); Hill Country Spring
Water, Inc. v. Krug, 773 S.W.2d 637, 641 (Tex. App.--San Antonio 1989, writ denied). Because
Dr. Burzynski is not entitled to the normal protections provided by the First Amendment to
commercial speech, it follows that he was not injured by the operation of the false advertising
statute. Thus, it was error for the trial court to rule on the statute's validity, and we sustain the
Board's second point of error. 



CONCLUSION


 Dr. Burzynski's patients are extremely vulnerable. They will pursue any treatment
which provides them with even a glimmer of hope because they feel it better to pursue every
possibility rather than resign themselves to the fate that almost certainly awaits. This pursuit of
life can at times lead to irrational thoughts, and certain opportunists would not hesitate to prey on
their vulnerability. The State of Texas in conjunction with the FDA protects these patients from
such exploitation. Although we do not mean to imply that Dr. Burzynski is such an opportunist,
neither can we find him to be above the laws written to protect his patients. We will not allow
our sympathy for the terminally ill to hinder our duty to uphold the law. See Northwest Laundry,
27 F.3d at 159-60; United States v. Burzynski Cancer Research Inst., 819 F.2d 1301, 1315 (5th
Cir. 1987). 

 Because we sustain the Board's points of error, we reverse the judgment of the trial
court and render judgment in accordance with the Board's order of August 31, 1994. 



 

 Jimmy Carroll, Chief Justice


Before Chief Justice Carroll, Justices Jones and B. A. Smith


Reversed and Rendered


Filed: February 7, 1996


Publish

 
1.   Among other things, the conditions include: (1) compliance with federal and Texas
law relating to the manufacture and distribution of drugs; (2) not advertising in violation
of § 431.183 of the Texas Health & Safety Code (the "false advertising statute"); (3)
providing all hospitals and health care entities where he has privileges with a copy of the
Board's order; (4) cooperation with Board attempts to verify compliance with its order;
(5) advising the Board of all address changes; (6) extension of the duration of the order
equal to the time spent practicing medicine outside of Texas, in retirement, or with a
license that was cancelled for nonpayment of licensure fees; and (7) compliance with the
Texas Medical Practice Act ("TMPA") and other statutes regulating the practice of
medicine.
2.   "Simply stated, antineoplastons are a special class of peptides, found in the blood,
that combat neoplastons--abnormal cells or cancer cells." Trustees of the Northwest Laundry
v. Burzynski, 27 F.3d 153, 155 n.1 (5th Cir. 1994), cert. denied, 115 S. Ct. 1110 (1995).
3.   Some of the patients benefitted while under Dr. Burzynski's care, but the Board's
oncologists were unable to determine whether the benefit was the result of the
antineoplastons or the delayed effect from some prior form of treatment.
4.  Section 18 preceded what is today § 431.114 of the Texas Health and Safety Code.
5.   Tex. Rev. Civ. Stat. Ann. art. 4542a-1 (West Supp. 1996).
6.   The purpose of chapter 169 of the Texas Administrative Code "is to provide
physicians with guidelines for supplying drugs to their patients as authorized by Texas
Civil Statutes, Article 4495b, § 3.06(d)(2) and § 5.09, and by the Texas Pharmacy Act." 
22 Tex. Admin. Code § 169.1 (West 1995).
7.   The false advertising statute states that "[a]n advertisement of a drug or device is
false if the advertisement represents that the drug or device affects neoplasms" or cancer. 
Tex. Health & Safety Code Ann. § 431.183(a)(2) (West 1992).



 v. Krug, 773 S.W.2d 637, 641 (Tex. App.--San Antonio 1989, writ denied). Because
Dr. Burzynski is not entitled to the normal protections provided by the First Amendment to
commercial speech, it follows that he was not injured by the operation of the false advertising
statute. Thus, it was error for the trial cou