**Miranda WASHINGTON, Individually and as Next Friend of Tamika Washington, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT d/b/a Village of Eastgate Property, STM Mortgage Company, Barron Builders & Management Company, Borg–Warner Protective Services Corporation d/b/a Wells Fargo Guard Services, Defendants.**

**STM MORTGAGE COMPANY, Third–Party Plaintiff,**

v.

**METRIC REALTY SERVICES, L.P., Third–Party Defendant.**

Civil Action No. 3:94–CV–1859–P.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 5, 1996.

---

Janette Johnson, Janette Johnson & Associates, Dallas, TX, for Plaintiff. ·

Kyle Moore, Vial Hamilton Koch & Knox, Dallas, TX, Paula Billingsley, Asst. U.S. Atty., N.D. of Texas, Dallas, TX, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

SOLIS, District Judge.

Now before the Court are:

1. Defendant Borg–Warner Protective Services Corporation's Motion for Summary Judgment, Motion to Dismiss and Memorandum in Support filed April 7, 1995;

2. Plaintiff's Response to Defendant Borg–Warner's Motion for Summary Judgment and Motion to Dismiss filed April 1, 1996;

3. Defendant Borg–Warner Protective Services Corporation's Reply Brief in Support of Motion for Summary Judgment and Motion to Dismiss filed April 15, 1996;

4. Motion for Final Summary Judgment of Defendant STM Mortgage Company and Brief in Support Thereof filed July 13, 1995;

5. Plaintiff's Response to Defendant STM Mortgage's Motion for Summary Judgment filed December 15, 1995;

6. Reply Brief of Defendant STM Mortgage Company to Plaintiff's Response to Motion for Summary Judgment filed January 2, 1996;

7. Federal Defendants' Motion to Dismiss Complaint, or in the Alternative, Motion for Summary Judgment filed October 5, 1994;

8. Plaintiff's Response to Defendant United States Department of Housing and Urban Development's Motion to Dismiss filed November 8, 1994; and

9. Federal Defendants' Reply to Plaintiff's Opposition to Federal Defendants' Motion to Dismiss filed November 22, 1994.

### *Background*

· Plaintiff, Miranda Washington is the mother and next friend of Tamika Washington, a minor. On January 8, 1992, Plaintiff, Tamika Washington, and other family members moved into the property known as the Village of Eastgate Apartments (the "Property"), located ·in Garland, Texas. Based on conversations with leasing ·agents at the Property, and based on her own observations of the Property, Plaintiff believed the Property was a safe place to reside.

In August 1992, while a resident of .the Property, Tamika Washington was the victim of an aggravated assault, specifically a rape, by Terry Wayne Howard. The rape occurred within the apartment being occupied by Terry Wayne Howard.[1] As a result of the rape, Tamika Washington became pregnant.

In late 1990, Defendant STM Mortgage Company ("STM") became the mortgage holder for the Property. After foreclosing on the Property in April 1992, STM acquired

---

**1.** Although Mr. Howard was not on the Property tinder a lease agreement, he had resided at the Property since May 1992, or earlier.

the Property and executed a Management Agreement with Metric Property Management to provide residential management services for the Property. The Management Agreement did not address security issues or procedures for the Property. On July 7, 1992, Defendant STM conveyed the Property to Defendant United States Department of Housing and Urban Development d/b/a Village of Eastgate Apartments ("HUD").

Defendant HUD currently owns and operates the Property. In August 1992, at the time of the assault, Defendant Borg–Warner Protective Services Corporation d/b/a Wells Fargo Guard Services ("Borg–Warner") was under contract with HUD to provide security services for the Property. Pursuant to the contract, Borg–Warner provided 24–hour–a–day security against loss or damage to the government property and its contents. The contract specifically states that guards *"will not ... offer protection for residents."* (Def. Borg Warner's Mot. S.J. Ex. B at C–1, C–3). Despite Borg–Warner's contentions that it was on the premises solely to secure government property, Plaintiff claims that prior to the incident at issue, security personnel employees had several contacts with Tamika Washington regarding her safety, each of which occurred on August 11, 1992. (Pl.'s Resp. Borg–Warner's Mot. S.J., Ex. C.)

Defendant Barron Builders & Management Company ("Barron") was, at the time of the assault, serving as the property manager for the Property. Under the terms of its contract with HUD, Barron was required to provide the necessary professional and technical personnel, materials, equipment, supplies and facilities to manage the Property. (HUD Ex. A, Section C.1.1.) Further, Barron's tasks as property manager included keeping the physical maintenance of the Property in a decent, safe and sanitary condition. (HUD Ex. A, Sec. C.2.3.11; C.2.3.14; and 2.3.21.17.)

Three of the Defendants now move for dismissal and/or summary judgment of the claims alleged against them.

## I. DEFENDANT BORG–WARNER'S MOTION TO DISMISS

Defendant Borg–Warner has moved to dismiss the following claims against it pursuant to FED.R.CIV.P. 12(b)(6): fraud, fraud in the inducement, intentional misrepresentation, negligent misrepresentation, intentional infliction of emotional distress and Deceptive Trade Practices Act violations ("DTPA").

### *Standard of Review*

A plaintiff's complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim for which relief can be granted. In ruling on a Rule 12(b)(6) motion to dismiss, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts as true. *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974); *FDIC v. Harrington,* 844 F.Supp. 300 (N.D.Tex.1994). However, "conclusory allegations and unwarranted deductions of fact are not admitted as true." *Harrington,* 844 F.Supp. at 302.

### *Discussion*

#### A. Intentional Infliction of Emotional Distress

Defendant Borg–Warner, in its Motion to Dismiss, argues that the allegations in Plaintiff's Second Amended Complaint fail to meet the threshold requirements of Texas law for a claim of intentional infliction of emotional distress ("IIED").

■ The Texas Supreme Court, in *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993), adopted the approach of the Restatement (Second) Torts for IIED. Under this approach, the elements of this tort are as follows: 1) the defendant acted intentionally or recklessly; 2) the conduct was extreme and outrageous; 3) the actions of the defendant caused the plaintiff mental distress;

and 4) the mental distress was severe. *Id.* at 622.

■ Regarding the element of outrageous conduct, the supreme court has stated:

> [L]iability for outrageous conduct should be found only where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and totally intolerable in a civilized community.

*Id.* at 621. The supreme court further stated that "it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993).

■ Assuming the allegations set forth in Plaintiff's pleading are true and that a reasonable jury would fully believe all such allegations, the described conduct could not be construed as going "beyond all possible bounds of decency," nor as being so extreme to be considered "atrocious and totally intolerable in a civilized society."

Plaintiff, in her Second Amended Complaint has alleged that Borg–Warner contracted to provide security services for the Property (¶ 19). She then makes global allegations as to each of the Defendants, including Borg–Warner. She has alleged that Borg–Warner (and the other Defendants) represented to Plaintiff that: (1) the apartment complex was a peaceful and safe place (¶ 24(4)); (2) the Property screened potential residents to insure that the Property was peaceful and safe (¶ 24(3)); and (3) the Property had 24–hour security (¶ 24(5)). Plaintiff alleges that despite these assurances, Defendants, including Borg–Warner, failed to warn tenants of criminal activity on the Property and the dangers of living at the Property, even though they had knowledge of such activity and danger (¶¶ 37, 40); and undertook negligent and grossly negligent acts or omissions in securing the safety of its residents (¶ 39), essentially failing to adequately secure the Property (¶ 35).

Although the facts in this case are decidedly tragic and highly-charged with emotion, the Court concludes that Defendant Borg–Warner's behavior, as alleged by Plaintiff, does not reach the level of extremity or outrageousness as defined by the courts of Texas. *E.g., Cantu v. Rocha,* 77 F.3d 795, 810 (5th Cir.1996) (defendant teacher's hostile behavior toward plaintiff after plaintiff accused a third-party student of sexual assault at a school sponsored event was not extreme or outrageous); *Mattix–Hill v. Reck,* 923 S.W.2d 596 (Tex.1996) (attempt by Department of Human Services caseworker to take advantage of plaintiff when informing plaintiff of the disappearance of her daughter from a foster home was not extreme or outrageous); *Wyatt v. Kroger Co.,* 891 S.W.2d 749 (Tex.App.—Fort Worth 1994, no writ) (defendant grocery store's ineffective action to cure situation when plaintiff's daughter witnessed perpetrator's act of indecent exposure was not outrageous).

Because the facts pled by Plaintiff as to Defendant Borg–Warner are legally insufficient to support the element of extreme and outrageous conduct, the Court finds Borg–Warner's conduct does not amount to IIED. Accordingly, Plaintiff's cause of action against Borg–Warner for IIED is DISMISSED.

## B. Fraud, Fraud in the Inducement, Intentional Misrepresentation, Negligent Misrepresentation and DTPA violations.

Defendant asserts that Plaintiff has not stated a cause of action for her fraud, misrepresentation and DTPA claims. Plaintiff, however, argues that she has set forth the requisite allegations to survive a Rule 12(b)(6) Motion to Dismiss.

■ The elements required for fraud or intentional misrepresentation causes of action in Texas are: (1) a material representation; (2) falsely made; (3) by a speaker who knew it to be false or made it recklessly without any knowledge of the truth as a positive assertion. *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977); *Darwin v. Fugit,* 914 S.W.2d 621, 627 (Tex.App.—Fort Worth 1995, no writ). Similarly, the elements for negligent misrepresentation

are a false representation made for the guidance of others who rely on it and suffer damage. *Hagans v, Woodruff,* 830 S.W.2d 732, 735–36 (Tex.App.—Houston [14th Dist.] 1992, no writ). In order to survive a Rule 12(b)(6) motion to dismiss on a DTPA claim, a plaintiff must allege that a false, misleading or deceptive act or practice constituted a producing cause of actual damages. *Busse v. Pacific Cattle Feeding Fund,* 896 S.W.2d 807, 817 (Tex.App.—Texarkana 1995, n.w.h.).

■ Borg-Warner has failed to provide any basis or authority to support its Motion to Dismiss the claims for fraud, fraud in the inducement, intentional misrepresentation, negligent misrepresentation and Deceptive Trade Practices Act violations. Instead, Borg-Warner asserts only that Plaintiff has failed to state a claim. Without briefing which sets forth Borg-Warner's contentions of fact and law as to its Motion, the Court cannot grant such a motion. *See* Local Rule 5.1(d).

■ Plaintiff, however, has merely made global allegations that *Defendants* made representations to her regarding the safety of the Property. Plaintiff claims that *Defendants* made these representations, knowing they were not true. Plaintiff alleges her reliance on these representations by *Defendants* caused her to decide to lease and re-lease her apartment on the Property. Plaintiff further claims that, despite the fact that *Defendants* knew of dangerous conditions and criminal activity on the Property, *they* did nothing to warn residents of such dangers. Plaintiff claims that because of her reliance on these misrepresentations by the *Defendants,* her daughter was assaulted by an individual living on the Property.

Plaintiff may not rely on such global allegations that Defendants, as a group, committed such acts or omissions. Plaintiff must specify in how each Defendant committed the acts or omissions which form the basis of her fraud, misrepresentation and Deceptive Trade Practices claims. Accordingly, the Court finds that Plaintiff will be allowed thirty days to re-plead her claims with more detail. Plaintiff's Third Amended Complaint is due on or before September 5, 1996.

To summarize, Defendant Borg–Warner's Motion to Dismiss for failure to state a claim pursuant to Fed.R.Civ.P 12(b)(6) is GRANTED in part and DENIED in part without prejudice, in that Plaintiff's claim for IIED has been DISMISSED.

## II. DEFENDANT BORG–WARNER'S MOTION FOR SUMMARY JUDGMENT

Defendant Borg–Warner has also moved this Court for summary judgment on the issues of negligence and gross negligence. For the following reasons, the Defendant's Motion for Summary Judgment is GRANTED.

### *Standard of Review*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Thomas v. Harris County,* 784 F.2d 648, 651 (5th Cir.1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party must identify the evidence on file in the case which establishes the absence of any genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553.

Once the moving party has made an initial showing, the party opposing the motion must offer evidence sufficient to establish the existence of essential elements of the party's case. *Matsushita Electrical Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment; the party defending against a motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a

jury might return a verdict in his favor. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514.

All evidence and the inferences to be drawn therefrom "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Marshall v. Victoria Transp. Co.,* 603 F.2d 1122, 1123 (5th Cir.1979). However, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case on which he will bear the burden of proof at trial, summary judgment must be granted. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2553.

### Discussion

■■■ The doctrine of negligence consists of three essential elements: a legal duty owed by one person to another, a breach of that duty and damages incurred as a result of the breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). In order to establish liability in tort, a plaintiff must prove the existence and violation of a duty owed to him by the defendant. Therefore, duty is the "threshold inquiry." *Id.* The determination of whether a duty exists is a question of law if there are no disputed facts or inferences. *Mitchell v. Missouri–Kansas–Texas R.R. Co.,* 786 S.W.2d 659, 662 (Tex.), *cert denied,* 498 U.S. 896, 111 S.Ct. 247, 112 L.Ed.2d 205 (1990). Thus, the issue before the Court, whether Defendant Borg–Warner owed a duty to protect Tamika Washington from criminal acts of third parties, is crucial to both Plaintiff's negligence and gross negligence claims.

■■■ In Texas, as a general rule, a defendant has no duty to prevent the criminal acts of a third party who does not act under the defendant's supervision or control. *Barefield v. City of Houston,* 846 S.W.2d 399, 403 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Midkiff v. Hines,* 866 S.W.2d 328, 332 (Tex.App.—Houston [1st Dist.] 1993, no writ). An exception to this rule arises where a defendant enters into an affirmative course of action for the benefit of another, creating a duty to exercise reasonable care.

*Diaz v. Southwest Wheel Inc.,* 736 S.W.2d 770, 772 (Tex.App.—Corpus Christi 1987, writ denied). The Texas Supreme Court, however, placed a limit on that voluntarily duty in *Fort Bend County Drainage Dist. v. Sbrusch,* when it stated:

A person's duty to exercise reasonable care in performing a voluntarily assumed undertaking *is limited to that undertaking, and will not normally give rise to an obligation to perform additional acts of assistance in the future.* A future obligation based on past conduct will arise if the first undertaking has increased a risk of harm, thereby requiring additional action to protect third persons, or if the actor makes an express promise that future assistance will be forthcoming, and the injured party relies to his detriment on that promise and the past conduct.

818 S.W.2d 392, 397–98 (Tex.1991) (citation omitted) (emphasis added).

■■■ Borg-Warner argues that it had no duty to protect Tamika Washington from criminal acts of a third party because the contract expressly provides that the purpose of the guard service is to protect the property of the government and *not to protect the residents* of the Property. Plaintiff alternatively argues that the contract bestowed upon the Defendant a power of occupation and control of the premises and therefore, Defendant had a duty to provide protection to Tamika Washington. To support this argument, Plaintiff relies on *Barefield,* where the court stated "[d]efendant's duty to provide protection arises from his *occupation* of the premises. By occupying the premises the defendant has the power of control and expulsion over the third party." *Barefield,* 846 S.W.2d at 403.

Plaintiff is incorrect in her characterization of Defendant's role created by the contract as an "occupation." To "occupy," is defined as "to take or enter upon possession of; to hold possession of; to hold or keep for use; to possess; to tenant; to do business in; to take or hold possession." BLACK'S LAW DICTIONARY, 1079 (6th ed.1990). The Restatement (Second) of Torts § 328E also defines "owner or occupier" in terms of "possessor,"

and this definition has been recognized by Texas courts. *Gunn v. Harris Methodist Affiliated Hosp.*, 887 S.W.2d 248, 251 (Tex. App.—Fort Worth 1994, writ denied). It is clear in reading the contract that the parties did not contemplate an "occupation" by Borg–Warner of the Property. Defendant contracted merely to provide security services for the governmental property. This responsibility gave Defendant no possessory interest or control over the Property whatsoever. Therefore, Defendant, in its responsibilities arising under the contract, had no duty to protect Plaintiff from criminal acts of a third party.

Plaintiff next argues that because Defendant's employees responded to an earlier disturbance involving Tamika Washington, Defendant deviated from the standard set forth in the contract and by so doing, expanded its duties to include providing protection for her. Plaintiff contends that this prior rendering of assistance by Defendant's employees constitutes an affirmative course of action for the benefit of Tamika Washington. Pursuant to *Diaz*, 736 S.W.2d at 772, Plaintiff contends that because the Defendant's employees voluntarily entered into this affirmative course of action, Defendant necessarily had a duty to exercise reasonable care in providing for the protection of Tamika Washington. Further, Plaintiff argues that Tamika Washington, after receiving such assistance from Defendant's employees, assumed that the security guards were there for her protection.

Defendant argues that one prior instance in which its employees came to the aid of Tamika Washington does not create an obligation for Defendant to perform additional acts of assistance in the future. Defendant also asserts that there is no evidence that its employees made an express promise that it would provide future assistance upon which Tamika Washington reasonably relied or that the prior incidents of assistance increased the risk of harm to her.

The supreme court, in *Sbrusch*, clearly stated that a defendant will not have a continued duty based merely on one unrelated act of assistance. *Sbrusch*, 818 S.W.2d at 397–398. Although Borg–Warner employees had several prior contacts with Tamika Washington before the assault at issue in this case, all of the incidents occurred on the same day and within a period of three hours and appear to be related to one incident. Additionally, Plaintiff admits that the reason for the acts of assistance occurring on August 11, 1992 is unrelated to the rape committed by Terry Wayne Howard against Tamika Washington. Defendant is correct in noting that there is also no evidence in the record to indicate that any promise for future assistance was made by the Defendant's employees to Tamika Washington or the existence of an increased risk of harm to her as a result of the prior incidents of assistance.

This Court concludes that Defendant did not voluntarily assume a duty to the Plaintiff because the prior act of assistance was unrelated to the incident at issue; there is no evidence of an express promise by Defendant's employees to provide future assistance to Tamika Washington; and there is no evidence that the prior act of assistance increased the risk of harm to Tamika Washington. Further, this Court cannot impose such a heavy burden on defendants, the natural result of which would be to "discourage people from assisting others in the first instance." *Id.* at 397 n. 4.

Because duty is the threshold element of any negligence and gross negligence claims, a cause of action which cannot prove the existence of such a duty must fail. This Court finds that Defendant Borg–Warner did not owe a duty to Tamika Washington to protect her from the criminal conduct of a third party. Therefore, Plaintiff's negligence and gross negligence claims must fail and Defendant Borg–Warner's Motion for Summary Judgment is GRANTED.

### III. DEFENDANT STM'S MOTION FOR SUMMARY JUDGMENT

Defendant STM Mortgage Company ("STM") has moved for summary judgment on all of the causes of action against it. For the reasons described below, STM's Motion for Summary Judgment is GRANTED.

## *Discussion*

### A. Negligence

As previously discussed in the context of Borg–Warner's Motion for Summary Judgment, a claim for negligence must consist of three elements: a duty owed by one person to another; a breach of that duty; and damages proximately resulting from that breach. *Poole,* 732 S.W.2d at 311.

### 1. Duty

Duty is the threshold issue in a negligence action. In order to establish a liability in tort, plaintiff must prove the existence of a duty and a violation of that duty by the defendant. *Id.* In determining whether there is a duty, the court considers several factors, including the risk, foreseeability, and the likelihood of injury versus the social utility of the actor's conduct, the defendant's burden in guarding against that injury, and the consequences of placing such a burden on the defendant. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). Of all of these factors, foreseeability of the risk is the foremost and dominant consideration. *Poole,* 732 S.W.2d at 311. Therefore, there must be sufficient evidence to show that "the defendant knew or should have known the harm would eventually befall a victim. Absent such a showing, defendant is absolved of liability." *Phillips,* 801 S.W.2d at 526.

As a general rule, a defendant has no duty to prevent the criminal acts of third party who does not act under the defendant's supervision or control. *Barefield,* 846 S.W.2d at 403. One exception to this rule, however, is that a defendant may be liable for the criminal acts of a third party if the criminal act occurs on the defendant's premises. *Id.* A second exception to this rule is when the criminal conduct is a foreseeable result of the defendant's negligence. As the *Barefield* court explained, "[t]he defendant has a duty to prevent injures to others if it reasonably appears or should appear to the defendant that others may be injured;" however, "[a]lthough criminal acts do occur and thus may be foreseeable in the broad sense, the occupier of the premises has no duty to guard against dangers he cannot reasonably foresee." *Id.*

On the issue of duty, the Restatement (Second) Torts § 344 states:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Pursuant to the foregoing, this Court finds Defendant STM did owe a duty to Plaintiff at the time it owned the Property to exercise reasonable care to discover that criminal or negligent acts were being done or were likely to be done on the Property, and to give a warning adequate to enable visitors and tenants to avoid the harm or otherwise to protect themselves against it.

### 2. Breach

Next, the determination must be made as to whether STM's evidence "conclusively establishes" its lack of knowledge or its inability to have known "from past experience or from the character of the business that criminal acts like those involved here were likely to occur, either generally or at some particular time. 'A matter is conclusively established only if ordinary minds cannot differ about the conclusion to be drawn from the evidence.'" *Kendrick v. Allright Parking,* 846 S.W.2d 453 (Tex.App.—San Antonio 1992, writ denied) (citing *Harris v. Varo, Inc.,* 814 S.W.2d 520, 522 (Tex.App.—Dallas 1991, no writ)). This determination turns, in part, on whether Defendant knew or should have known that criminal activity was occurring on the Property.

Before liability will be imposed, there must be sufficient evidence indicating that the defendant knew or should have known that harm or injury would eventually

befall a victim. *Phillips* at 526. Further, pursuant to *Kendrick*, the Defendant also has a duty to present evidence to the Court that "conclusively establishes that the Defendant did not know or could not have known from their past experiences or from the character of their businesses that criminal acts like those involved here were likely to occur." *Kendrick*, 846 S.W.2d at 457.

■ The evidence presented regarding criminal activity is as follows: (1) Plaintiff's testimony regarding the murder of her nephew, Kendrick Ragsdale; (Def.'s Reply Br., Ex. A, p. 24–27, 92, 109); (2) Plaintiff's testimony regarding an incident when a man was arrested for having a gun on the playground area (Def.'s Reply Br., Ex. A, p. 27–28); and (3) the allegation in Plaintiff's Response to Defendant's Motion for Summary Judgment that the presence of Terry Wayne Howard on the Property in violation of the lease constituted criminal trespass (Pl.'s Resp. Mot. Summ. J. at 11). Plaintiff further argues that because of the nature of the Property merely as an apartment complex, crime is to be foreseen and expected. Thus, Defendant was obligated to warn the Plaintiff of, and protect the Plaintiff from, this inherently dangerous potential.

The summary judgment evidence is not clear as to the dates of the incidents involving the murder of Plaintiff's nephew or the presence of an individual on the playground with a gun[2]. The Court will not speculate as to when these matters occurred. Therefore, it is impossible to determine that Defendant breached its duty because of these occurrences.

■ The presence of an individual on the Property in violation of a lease provision[3] does not constitute criminal trespass. A person commits an offense of criminal trespass if "he enters or remains on property or in a building of another without effective consent and he had notice that the entry was forbidden; or received notice to depart but failed to do so." TEX. PENAL CODE ANN. § 30.05 (Vernon 1994). There is no evidence that Howard was given any notice or whether any signs were posted advising non-residents that their presence on the Property could constitute criminal trespass. Absent further evidence regarding the circumstances of Howard's presence on the property, it cannot be concluded that Howard was committing criminal trespass on the Property.

There is no evidence or testimony which would indicate that this Property or the surrounding area lends itself to criminal activity. Certain apartment complexes in Dallas are inherently dangerous, due to criminal activity occurring on or around the premises, but such a broad and general conclusion regarding all apartment complexes, as encouraged by Plaintiff, cannot be made.

Moreover, the fact that the Plaintiff was clearly aware of each of these criminal acts, as evidenced by her deposition testimony, serve to defeat her argument that she was unaware of such dangerous conditions. Because the Plaintiff testified to such matters, the Court cannot help but conclude that, irrespective of her receiving notice from Defendant, she was aware of these conditions and decided to continue to reside at the Property.

In light of the foregoing, this Court concludes that Defendant STM did not breach its duty to discover and warn tenants and visitors regarding criminal activity on the Property.

### 3. Cause

Even were the court to determine that the STM had breached its duty to warn the Plaintiff of criminal activity, such breach is not the proximate cause of the Plaintiff's injury.

■ In Texas, proximate cause consists of cause in fact and foreseeability. These elements "cannot be established by mere conjecture, guess or speculation." *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 477 (Tex.1995); *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 549

---

**2.** See Def.'s Reply Br., Ex. A, p. 24, 27.

**3.** Plaintiff has not provided the Court a copy of any lease supporting this argument. Therefore, it is not established that Howard's presence was even a lease violation or whether Plaintiff was the intended beneficiary of such an agreement.

(Tex.1985). "Cause in fact denotes that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." *Nixon*, 690 S.W.2d at 549. In *Doe*, the Texas Supreme Court stated that defendant's negligence is not cause in fact if it "did no more than furnish a condition which made the injury possible." Rather, the evidence must go further, showing that such negligence was the "proximate, and not the remote" cause of the plaintiff's injuries and must "justify the conclusion that such injury was the natural and probable result thereof." Therefore, according to *Doe*, "even if the injury would not have happened but for the defendant's conduct, the connection between the defendant and the plaintiff's injuries may simply be too attenuated to constitute legal cause." *Doe*, 907 S.W.2d at 477.

To illustrate, in *Nixon*, the assailant took a child directly to an easily accessible vacant apartment where he raped her, put her in a closet, and told her not to leave. The court inferred that the assailant was "acutely aware" of the existence of the vacant unit and "embarked upon his course of criminal conduct at this particular time and place knowing that this unit was an easily accessible place in which to perpetrate this assault in isolation." *Id.* Thus the court found that the defendant property owner was negligent because *it had directly contributed to the plaintiff's injuries* by allowing such a place which invited criminal activity to be so easily accessible. Further, the statute which defendant violated in *Nixon* was enacted to prevent exactly the kind of harm which occurred. Alternatively, in *Doe*, three boys were molested by a Boys Club employee during the course of several private (non-Boys Club sponsored) camping trips. The employee was performing court ordered community service at the Boys Club because of a prior conviction for driving while intoxicated. The court held that the defendant Boys Club's failure to investigate, screen or supervise its workers was not the cause in fact of the plaintiffs' injuries. *Id.* at 478.

▮▮▮ Foreseeability, the second component of proximate cause, means that "the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon*, 690 S.W.2d at 549–550. Foreseeability and proximate cause involve an inquiry into whether the injury might reasonably have been contemplated as a result of the defendant's conduct. "Foreseeability requires more than someone viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury." *Doe*, 907 S.W.2d at 478. However, foreseeability of the particular act is not required, merely that the "injury be of such a general character that it might reasonably have been anticipated, and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." *Carey v. Pure Distributing Corp.*, 133 Tex. 31, 124 S.W.2d 847, 849 (1939).

▮▮▮ The task in the first prong of the analysis, regarding cause in fact, is to determine whether the negligent act or omission was a substantial factor in bringing about the injury to Tamika Washington, or whether it merely furnished a condition whereby the injury was possible. Based on the summary judgment evidence, it appears that the act or omission of the Defendant was not the substantial factor in bringing about the injury to Tamika Washington. Plaintiff has not shown the causal connection between the Defendant not warning the Plaintiff about the criminal activity discussed and her child voluntarily knocking on the door of Howard's apartment and her subsequent assault. Defendant's negligence may have furnished a condition which made the injury possible; however, the connection between the acts or omissions by the Defendant and the injuries suffered by Plaintiff is too attenuated to constitute cause in fact. Additionally, the fact that Plaintiff already knew of such incidences from other sources and yet decided to remain living on the Property further enforces the improbability that Defendant's failure to warn was the proximate cause of Plaintiff's injuries.

In analyzing the foreseeability prong of proximate cause, the evidence neither shows nor invites an inference that Defendant could have foreseen that, as a result of this crimi-

nal activity, further crimes were likely to occur. The fact that an individual was on the property with a gun would not lead a reasonable property owner to foresee an assault like the one at issue. Further, the murder of Plaintiff's nephew, because of the nature of the relationship between the murderer and the victim, would not lead a reasonable property owner to foresee an assault of this nature being likely to occur on the Property. Moreover, it cannot be foreseen that other criminals, as a result of these crimes, would target the property to perpetrate their own crimes.

Because the alleged breaches of duty were not the cause in fact and because Defendant could not have foreseen the danger that such breach created, this Court concludes that any arguable breach of the Defendant's duty to the Plaintiff was not the proximate cause of the Plaintiff's injuries. In conclusion, this Court finds that the Plaintiff's claims for negligence and gross negligence as to STM must fail.

### B. Fraud and Misrepresentation Claims

 As discussed above in the context of Borg–Warner's Motion to Dismiss, in Texas, actionable fraud and intentional misrepresentation claims require:

(1) that a material misrepresentation was made; (2) that it was false; (3) that when the speaker made it, he knew it was false or made it recklessly, without any knowledge of the truth as a positive assertion; (4) that he made it with the intention that it be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury.

*Stone,* 554 S.W.2d at 185; *Darwin,* 914 S.W.2d at 627. Similarly, negligent misrepresentation, as discussed above, is actionable when a defendant makes a false misrepresentation for the guidance of others who, in reliance of it, suffer damage. *Hagans,* 830 S.W.2d at 735–36. A defendant's duty to disclose a material fact constitutes fraud if the defendant has a duty to disclose that fact. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex.1986); *Trustees of the Northwest Laundry v. Burzynski,* 27 F.3d 153 (5th

Cir.1994). Fraud by non-disclosure arises only by law or by agreement of the parties. Absent an agreement, there must be some special relationship between the parties, such as a fiduciary or confidential relationship before a duty to disclose arises. *Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.,* 715 S.W.2d 658, 669 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (landlord owed no duty to tenant to disclose information); *Stephanz v. Laird,* 846 S.W.2d 895, 904 (Tex.App.—Houston [1st Dist.] 1993, writ denied). A duty to disclose is owed when a party learns that previous affirmative representations are in fact false. *Susanoil, Inc. v. Continental Oil Co.,* 519 S.W.2d 230, 236 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). However, "a party cannot be guilty of fraudulently or intentionally concealing facts of which he is not aware." *HTM Restaurants v. Goldman Sachs & Co.,* 797 S.W.2d 326, 329 (Tex. App.—Houston [14th Dist.] 1990, no writ); *Burzynski,* 27 F.3d at 157. "Although silence can be a form of misrepresentation, the duty to speak does not arise until the party is aware of the facts." *HTM Restaurants,* 797 S.W.2d at 329.

 Defendant STM moves for summary judgment on these causes of action based on three arguments. First, STM claims that this cause of action is predicated upon there being some sort of communication made by Defendant or its agents to the Plaintiff, which did not occur. Second, Defendant argues that it did not know any information that could form the basis of a failure to disclose under a fraud claim. Alternatively, Defendant argues that *Plaintiff* had intimate knowledge of the very information which she claims was kept from her, pointing to her testimony regarding the shooting of her nephew on the premises of the Property. Defendant argues that Plaintiff, despite this knowledge, continued to reside at the Property.

Plaintiff argues that no direct communication is required under Texas law for an action in fraud to be maintained. Instead she suggests that the *lack* of communication constitutes fraud. Plaintiff argues that during the time that STM owned the Property, there were no warnings of area crime, no

postings of warnings to residents regarding area crime, no indications given to the residents that lease provisions would no longer be enforced, no indication that the security patrols would not protect the residents, and no actions taken by Defendant to suggest that the property was no longer safe. In other words, Plaintiff contends that STM concealed the true nature of the property to induce Plaintiff to remain on the property, and that if STM had given her any indication that the property was no longer safe, she would have looked elsewhere for a place to live.

There is no evidence proving that STM owed a contractual duty to the Plaintiff. Nor is there evidence to prove that the relationship between Defendant and Plaintiff was fiduciary, confidential or other, requiring STM to disclose information to the Plaintiff. Additionally, there is no evidence that Defendant made any representation to the Plaintiff. There is also no evidence that STM knew of any criminal activity on the Property. Moreover, there is no evidence showing that Defendant knew such representations had been made by the prior owner or its agents which were now false. Absent this evidence, the Court finds no fraud, fraud in the inducement, or negligent or intentional misrepresentation on the part of Defendant STM.

## C. DTPA Claims

In Texas, the elements of a DTPA cause of action are: (1) plaintiff is a consumer; (2) Defendant engaged in false, misleading or deceptive acts; and (3) the acts were a producing cause of plaintiff's injuries. TEX.BUS. & COM.CODE § 17.50(a)(1); *Doe*, 907 S.W.2d at 478. To be actionable under the DTPA,

> a failure to disclose material information necessarily requires that the defendant have *known* the information and have failed to bring it to the plaintiff's attention.

*Id.* at 479 (emphasis added). Further, the defendant has no duty to disclose material facts it *should have* known. *Id.; Prudential Ins. Co. v. Jefferson Assoc., Ltd.,* 896 S.W.2d 156, 164 (Tex.1995).

As with the fraud and misrepresentation claims, STM again argues that Plaintiff cannot prevail on her DTPA claim because STM had no knowledge of any information that could form the basis of such a claim. Defendant further asserts that the Plaintiff's knowledge of the information she claims that Defendant withheld from her renders her claims ineffective. Plaintiff argues that *conduct* that is either false or has the capacity to mislead can form the basis of a cause of action under the DTPA.

Plaintiff has failed to provide evidence to indicate that Defendant had actual knowledge of information relating to criminal activity on the Property or that the Defendant knew of any prior misrepresentations made by the previous owner or its agents. Without this essential element to a DPTA cause of action, the Plaintiff's claim must fail.

## D. IIED

As discussed above, pursuant to the Restatement and Texas law, the elements of intentional infliction of emotional distress are: 1) the defendant acted intentionally or recklessly; 2) the conduct was extreme and outrageous; 3) the actions of the defendant caused the plaintiff mental distress; and 4) the mental distress was severe. *Twyman,* 855 S.W.2d at 622.

The evidence presented regarding STM's behavior is that: (1) Defendant took possession and ownership of the Property in April 1992; (2) while Defendant owned the Property, it did not specifically address or provide for security on the Property; (3) Defendant did not notify Plaintiff of criminal activity on the Property. Based on this evidence, the conduct of Defendant STM could not be construed as going "beyond all possible bounds of decency," nor as being "atrocious and totally intolerable in a civilized society" and thus, does not reach the level of extreme or outrageous as defined by the courts of Texas. Because the evidence introduced by Plaintiff as to Defendant STM is legally insufficient to support the element of extreme and outrageous conduct, the Court finds STM's conduct does not amount to IIED.

In conclusion, this Court finds that Plaintiff's causes of action against Defendant STM must fail. Therefore, Defendant STM's Motion for Summary Judgment is GRANTED.

## IV. HUD'S MOTION TO DISMISS/SUMMARY JUDGMENT

### Discussion

 The United States, as sovereign, is immune from suit except as it consents to be sued. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). Congress has, however, waived the federal government's sovereign immunity in limited situations through the Federal Tort Claims Act, 28 U.S.C. 1346, *et seq.* ("FTCA"). Because the Department of Housing and Urban Development ("HUD") is an agency of the United States, this action arises under § 1346(b) of the FTCA which provides for actions against the United States

for personal injury or death caused by the negligent or wrongful actor or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

### A. Fraud, Misrepresentation & DTPA claims

 HUD argues that the Plaintiff's allegations of fraud, fraud in the inducement, misrepresentation and violation of the DTPA are barred by 28 U.S.C. § 2680(h). The Plaintiff argues that personal injury claims are not barred by immunity claims. Plaintiff further argues that the misrepresentation exception does not apply if the injury suffered is not commercial or if losses are due to a misrepresentation of safety.

28 U.S.C. § 2680 provides exceptions to § 1346(b) and specifically states that claims arising out of misrepresentation and deceit will be barred as against the United States. 28 U.S.C. § 2680(h). There is no language in the text of the act which provides that claims arising out of misrepresentation or deceit

which result in personal injury will be excepted from this exclusion.

Federal courts have accordingly held that sovereign immunity is not waived under a misrepresentation claim in personal injury cases. *See, e.g., Schneider v. United States*, 936 F.2d 956, 958 (7th Cir.1991), *cert. denied*, 502 U.S. 1071, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992); *Hamre v. United States*, 799 F.2d 455 (8th Cir.1986).

Causes of action under the Texas DTPA against the United States are likewise barred by the FTCA. *A.L.T. Corp. v. Small Bus. Admin.*, 801 F.2d 1451 (5th Cir.1986). The Fifth Circuit has noted that the FTCA provides the *exclusive* remedy for such actions. *Id.* at 1462.

Because fraud, fraud in the inducement, misrepresentation and DTPA claims are excluded from being brought against the United States under the FTCA, sovereign immunity has not been waived.

### B. Independent Contractor Exception

 The FTCA, in defining the scope of "employee," includes officers and employees of any federal agency, "but does not include any contractor with the United States." 28 U.S.C. § 2671; *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). Thus, the rule under the FTCA is that the United States is not liable for the negligence of a government contractor or for failure to exercise the proper supervision or control over its independent contractor. *Alexander v. United States*, 605 F.2d 828, 833 (5th Cir.1979); *Gowdy v. United States*, 412 F.2d 525 (6th Cir.1969).

 In deciding whether an entity is an independent contractor under this exception, the inquiry focuses on the degree of control exercised by the United States. In order to be liable, the government must have supervised the "day-to-day operations or controlled the detailed physical performance of the contractor." *Martinez v. United States*, 661 F.Supp. 762, 763 (W.D.Tex.1987) (quoting *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976)).

Several courts have determined that a property manager is an independent contractor under the FTCA. Examining the management contracts between HUD and the companies hired to manage HUD-owned properties, these district courts have found that the contractor, and not HUD, is liable for any negligence. *See e.g., Brookins v. United States*, 722 F.Supp. 1214, 1219 (E.D.Pa.1989) (holding that realty firm which managed HUD-owned housing project was an independent contractor for the purposes of FTCA liability); *Truesdale v. CMC Realty Co.*, 671 F.Supp. 1173, 1175 (N.D.Ill.1987) (holding that the management company was independent contractor rather than "employee" under FTCA, and HUD not amenable to suit); *Aetna Life & Casualty Ins. Co. v. United States*, 508 F.Supp. 298, 301 (N.D.Ill. 1981) (holding that property manager was an independent contractor of the United States for purposes of the FTCA and the United States was not liable for negligence).

In a case similar to the one at bar, Chief Judge Sanders of the U.S. District Court for the Northern District of Texas granted summary judgment to HUD Defendants based on the independent contractor exception. *Cynthia Clark v. United States of America, Department of Housing and Urban Development*, No. 3:93–CV–0634–H, slip op. (N.D.Tex., July 16, 1993). The court held that the property manager, and not HUD, was responsible for the day-to-day operations of the housing complex and was acting as an independent contractor. *Id.*

HUD argues that Plaintiff's claims as against it is barred by the "Independent Contractor" exception to the FTCA, 28 U.S.C. §§ 1346(b) and 2674, which defines government employees to include officers and employees of any federal agency "but does not include [employees of] any contractor with the United States." 28 U.S.C. § 2671. HUD argues that, because of the contracts it had in place with co-defendants Barron and Borg–Warner, it should be exempt from liability under the FTCA.

Plaintiff raises several issues regarding this argument: (1) HUD's contracts with Barron and Borg–Warner do not establish that HUD did not control the day-to-day

operations of the Property; and (2) even assuming that Borg–Warner and Barron were independent contractors, HUD is still liable for its own negligence.

Because extrinsic evidence has been presented to the Court, this issue shall be decided under Rule 56 as a Motion for Summary Judgment. FED.R.CIV.P. 12(b). Under the contract between Barron and HUD for the Property in this case, Barron was required to perform the day-to-day duties under the contract, and to provide "security needs and recommendations" as part of the "Tenant Services and Initiatives to be provided and actively encouraged ..., at a minimum." (Def.'s Ex. A at C–8 § 2.3.21.7.) Further, Barron was also contractually required to provide HUD with a management plan which provided a "detailed plan of the proposed security measures to be taken at the project, including a summary of hardware, electronics and staff to [be] used in implementation of the security plan." (Def.'s Ex. D at 3.13.B. 25.)

Borg-Warner was similarly required to perform the day-to-day security duties for the governmental property under its contract with HUD. Borg–Warner, pursuant to the contract, provided the personnel and equipment necessary to perform its part of the contract. Additionally, Borg–Warner retained the right to exercise full control and supervision over its employees as well as the responsibility for payment of employees, and associated employment benefits. Further, the language of the contract itself describes Borg–Warner as "contractor" (Def. HUD's Ex. B, p. C–4) Given the nature of the relationships between HUD and Barron and HUD and Borg–Warner, and the contracts in effect at the time of the Plaintiff's injuries, the Court finds that Barron and Borg–Warner were independent contractors for purposes of the FTCA.

## C. HUD's Independent Negligence

Plaintiff argues that, even if the Court finds that Barron and Borg–Warner were independent contractors, liability may still be imposed on the government under the FTCA for negligent or wrongful acts or omissions of its employees. Plaintiff alleges that as the

owner of the Property, HUD had a duty to prevent foreseeable criminal acts of third parties. Plaintiff has alleged HUD was negligent in failing to provide a safe place for residents to live. Plaintiff has also argued that a decision on this issue is premature until further discovery can be completed as to this issue.

As discussed fully in the analysis of Plaintiff's negligence claims against STM, defendant owners of property in Texas may be liable for the criminal acts of third parties if the criminal act occurs on the defendant's premises and such criminal act is foreseeable. *Barefield*, 846 S.W.2d at 403.[4] The Court is aware that an Order was entered on September 12, 1995, staying discovery until Judgment on HUD's Motion for Summary Judgment had been decided. The Court now finds it appropriate to allow Plaintiff until October 1, 1996, to conduct discovery as to this narrow issue of the independent negligence of HUD. In the event Plaintiff desires to develop this claim, Plaintiff's Response to Defendant's Motion for Summary Judgment is due no later than October 15, 1996. Defendant's Reply Brief is due no later than October 31, 1996.

## D. IIED Claims

The Court, earlier in this Opinion, has found that Plaintiff's allegations as to Borg–Warner did not sufficiently state a claim for IIED. Plaintiff has made global allegations as to all Defendants. attributing the acts of each Defendant to all Defendants. Therefore, the analysis of Plaintiff's IIED claims against Borg–Warner equally applies to Plaintiff's claim against HUD for IIED. For the same reasons the Plaintiff's claim for IIED for Borg–Warner fail, Plaintiff's claims against HUD for IIED must also fail.

## CONCLUSION

To summarize the findings and decisions made by the Court today:

1. Borg-Warner's Motion to Dismiss pursuant to Rule 12(b)(6) is GRANTED in part and DENIED in part without prejudice. Plaintiff's cause of action for IIED is DISMISSED for failure to state a claim. Plaintiff is granted until September 4, 1996, to replead its claims of fraud, fraud in the inducement, intentional and negligent misrepresentation and DTPA violations, setting forth in more specific detail its allegations as to the remaining Defendants.

2. Defendant Borg–Warner's Motion for Summary Judgment as to Plaintiff's negligence and gross negligence claims is GRANTED.

3. Defendant STM Mortgage Corp.'s Motion for Summary Judgment is GRANTED.

4. Defendant HUD's Motion to Dismiss is GRANTED in that Plaintiff's causes of action for fraud, fraud in the inducement, intentional and negligent misrepresentation, DTPA violations and IIED are DISMISSED. Plaintiff is granted until October 1, 1996, to conduct discovery as to the issue of the independent negligence of HUD. Plaintiff's Response to Defendant's Motion for Summary Judgment as to this issue is due no later than October 15, 1996 and Defendant's Reply Brief is due no later than October 31, 1996.

So ORDERED this the 5th day of August, 1996.

---

4. The Court notes that even if HUD were to be found liable under this theory, punitive damages are not available to Plaintiff as to its claims against HUD. 28 U.S.C. § 2674 states "[t]he United States ... shall not be liable for ... punitive damages." Further, the Supreme Court has clearly stated that the FTCA bars recovery of punitive damages from the United States or its agencies. *Molzof v. United States*, 502 U.S. 301, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992).